C. B. HARRIS, Appellee, v. CHARLEY WARNER et al., Appellees; GLENN P. ROBINSON, Executor, Intervener, Appellant.

TRUSTS: Constructive Trusts—Owner of Promissory Note Payable to
1    Agent. Equity will establish a trust in favor of the actual owner of a promissory note which is payable to such owner's agent, against the agent's indorsee *who paid nothing for the note.*

WITNESSES: Competency—Transaction with Deceased — Testimony
2    Against Executor. A plaintiff seeking to establish his ownership of a note which had been taken in the name of his agent as payee may not, against the executor of the deceased indorsee of the note, testify to personal transactions or communications with the agent-payee.

BILLS AND NOTES: Indorsement—Partial Indorsement—Protection
3    in Equity. The genuine and good-faith indorsement of *part* of a negotiable promissory note for value will be protected in equity, notwithstanding the fact that such a transaction does not constitute a negotiation of the instrument in law.

ESTOPPEL: Equitable Estoppel—Agent Taking Note in Own Name.
4    The act of the real owner of a promissory note in authorizing or permitting his agent to take a renewal note in his own name works no estoppel in favor of the agent's indorsee who paid nothing for the note.

Headnote 1: 39 Cyc. p. 567. Headnote 2: 40 Cyc. p. 2305. Headnote 3: 39 Cyc. pp. 559, 560. Headnote 4: 8 C. J. p. 480; 21 C. J. p. 1172.

*Appeal from Delaware District Court.*—GEORGE W. WOOD, Judge.

APRIL 7, 1925.

ACTION in equity, to establish plaintiff's ownership of a certain note and mortgage payable to plaintiff's agent. The intervener claimed under an assignment of the note from the agent. From a decree for plaintiff, intervener appeals.— *Affirmed.*

*Telfair Knight, Albion W. Knight,* and *Yoran & Yoran,* for appellant.

*Blair & Doolittle,* for Harris, appellee.

*Bronson & Tierney,* for Warner and wife, appellees.

*Telfair Knight* and *Yoran & Yoran,* for administrator Boggs estate, appellee.

VERMILION, J.—The principal question, and, in the view we take, the only one we are required to determine, arises between the plaintiff appellee, and the intervener, the appellant, over the ownership of a certain note payable to the order of Ennis Boggs, for $10,000, dated February 28, 1918, signed by the appellees Charley Warner and Minnie Warner, and secured by a mortgage on land. It is conceded that there is but $3,000 and accrued interest due on the note. The note bears the following indorsements:

1. TRUSTS: constructive trusts: owner of promissory note payable to agent.

"Int. paid to 28 Feby. 1919." "Int. paid to Feby. 28 1920." "I hereby assign to Ella P. Robinson $6,000 of within note. [Signed] Ennis Boggs."

Miss Ennis Boggs had at one time been engaged in the abstract and loan business at Manchester. She loaned the funds of others intrusted to her for that purpose. Some ten or twelve years before her death, in 1922, she removed to Jacksonville, Florida, where she continued in the same business, and continued also to handle the investments of clients in Iowa. She had at one time been associated in business with R. R. Robinson, who was the husband of Ella P. Robinson, deceased. Glenn P. Robinson, as executor of the estate of Ella P. Robinson, is the intervener. Glenn P. Robinson is also the administrator of the estate of Ennis Boggs, and as such appeared in this action, and disclaimed any interest in the note and mortgage in controversy.

It appears that in 1908 one Merriam sold a farm in Delaware County to the appellees Charley and Minnie Warner, taking their notes aggregating $19,100, secured by a mortgage on the land, in part payment. Subsequently, Merriam bought a farm from R. R. Robinson, in which Ennis Boggs seems to have had some interest, and turned the notes and mortgage for $19,100 over, in part payment. Ennis Boggs had in her hands for some years a considerable amount of money belonging to the appellee Harris, which she handled and invested for him. The notes and mortgage of the Warners for $19,100 came into the possession of Harris, as representing a part of his money so in the hands of Miss Boggs. It is not entirely clear what the indorsements on the notes were. Harris testified that they were indorsed by Merriam to him, and that, as they appeared at the trial, the indorsements had been changed. We understand that alterations in the indorsements were apparent, and that, as they appeared at the time of the trial, they were indorsed by Merriam to R. R. Robinson and Ennis Boggs. Whatever the fact may be as to this, it is shown without dispute that the notes and mortgage were in the actual possession of Harris from 1910 or 1911 to some time in 1918. ·

At this point we may observe that objections were interposed to the competency of the witness Harris to testify to personal transactions or communications between himself and Ennis Boggs, deceased, as against the intervener, claiming by assignment from her to his testatrix, under Section 4604, Code of 1897 (Section 11257, Code of 1924). This objection, where timely, was good.

2. WITNESSES: competency: transaction with deceased: testimony against executor.

But it is established by competent evidence that, shortly before the notes were due, which was on February 28, 1918, Harris sent them with the mortgage to Miss Boggs at Jacksonville. She prepared the note and mortgage in controversy here, for the balance that would remain unpaid on the former notes, after deducting a payment of $2,000 to be made on the principal at that time, and sent them to a bank at Ryan, Iowa, to be executed by the Warners. They were so executed, and returned by the bank with remittance of the payment to Miss Boggs at Jacksonville.

The plaintiff produced and introduced on the trial a so-called ledger that he had had in his possession from the time entries were first made in it. The entries were in the handwriting of Ennis Boggs, and related to various loans, including the Warner loan. It showed the original loan of $19,100, the payments of interest and principal, and the renewal in the sum of $10,000 on March 1, 1918. On March 2, 1918, Miss Boggs wrote Harris:

"Mr. Werner [a spelling of Warner's name shown to have been used by her] has not returned his papers yet as it seems there was a second loan on the place and he has had to have that released before our new loan will be a first lien. I have not released the old mortgage and will not until the abstract is returned to me showing the new mortgage a first lien. As soon as the papers are in shape I will send them to you as that loan is nearer you than me."

In earlier letters she had accounted to Harris for payments of principal and interest on the notes for $19,100, and in subsequent letters to him accounted for the interest on the $10,000 note in controversy, for the years 1919 to 1922, inclusive.

Upon this evidence, the appellee Harris claims that he has established a trust in his favor upon the note and mortgage in question in the hands of Ennis Boggs. We think this is true. *In re Estate of Fisher,* 128 Iowa 18; *Amidon v. Snouffer,* 139 Iowa 159; *Frink v. Commercial Bank of Emmetsburg,* 195 Iowa 1011. But this is not conclusive as against the intervener, who is in possession of the note and holds under the indorsement of the payee.

The note and mortgage, as has been said, are payable to Ennis Boggs; and the note bears the indorsement, set out above, of $6,000 of its amount to Ella P. Robinson, signed by Ennis Boggs. The note and mortgage were in the possession of Ella P. Robinson, and were produced by the intervener, her executor. In order to impress the trust upon the property in the hands of the intervener, the appellee Harris was further required to show that Ella P. Robinson was not a purchaser for value without notice.

"Equity will not impress a constructive trust upon property that has passed into the hands of a good-faith purchaser

for value, without notice. Such a purchaser is regarded as equal, if not superior, in equity. Where the equities are equal as between two innocent parties, the one having the legal right and title will prevail. This is a broad principle in equity, which has a manifold application. It is not dependent for its operation upon recording acts or upon the Negotiable Instruments Act, although it be consonant therewith. It is older than both of these. It is as old as equity jurisprudence, and is fundamental therein." *Frink v. Commercial Bank of Emmetsburg*, supra; *Wegener v. Emmetsburg Nat. Bank*, 195 Iowa 1267.

The case does not involve the question whether Ella P. Robinson was a holder in due course, as against defenses which the maker might have against the payee; but the question is

3. BILLS AND NOTES: indorsement: partial indorsement: protection in equity.

whether Harris, the equitable owner of the paper as against the payee, is entitled to recover it as against the apparent legal title acquired by Ella P. Robinson by indorsement and delivery from the payee. And this is not controlled by the fact that the indorsement is not of the entire instrument, under Section 3060-a32, Code Supplement, 1913 (Section 9492, Code of 1924), but depends, under the evidence in this case, upon whether Ella P. Robinson paid value for the note and mortgage, or her alleged interest in it, or whether it was transferred to her by Ennis Boggs as a mere accommodation. If she paid nothing for the note, this is as fatal to her standing as a good-faith purchaser as if she took with notice of the rights of Harris. As to this, the evidence, we think, does not leave the question in serious doubt. There is in evidence the paid check of Ella P. Robinson to Ennis Boggs for $6,000, dated March 3, 1919, and the paid check of Ennis Boggs to Ella P. Robinson for $300, dated March 8, 1920. In the corner of the latter appears the name "Werner." It is claimed that the $6,000 check shows the payment by Mrs. Robinson to Ennis Boggs of that amount for so much of the note, and that the latter was in payment of a year's interest due Mrs. Robinson as such owner. There is no evidence to connect the $6,000 check with the Warner note; and the same thing is true with respect to the check for $300, unless it be the name "Werner" on the corner of the check. There is conflict in the testimony as to whether this name is in the hand-

writing of Ennis Boggs. It is, however, shown by the testi-
mony of B. J. Jewell, whose deposition was taken by Harris,
but offered by the intervener, that, on or about October 9, 1920,
over a year and a half after the date of the $6,000 check, Ennis
Boggs asked him to loan Mrs. Robinson $6,000, to complete a
house the latter was building, and take Mrs. Robinson's note,
and that:

"Ennis Boggs said she would indorse $6,000 to Mrs. Robin-
son on a note of $10,000 which she held against Charley Warner,
of Delaware County, Iowa, his note being covered by a mort-
gage on a farm and duly recorded in the records of Delaware
County, Iowa, and his note was due at the time the note Mrs.
Robinson was to give me would be due."

He further testified:

"Ella P. Robinson then took the note she was to give me,
and stepped into the other room of Ennis Boggs's office, to sign
the same, and Ennis Boggs took the Warner note to her desk
and wrote something on a paper on her desk, and I remained
standing in the room. She arose from her desk with the Warner
note and handed it to me with the mortgage, and Mrs. Robinson
handed Ennis Boggs her note for $6,000 as referred to hereto-
fore, which Ennis Boggs handed me with the Warner note and
mortgage. As I have stated, the Charley Warner and Minnie
Warner note was handed to me by Ennis Boggs with the mort-
gage covering the same, and Ennis Boggs said she had indorsed
$6,000 on the back of the note to Mrs. Robinson; and I noticed
that the same had been done when I took the note. I also no-
ticed that statement of interest paid was also indorsed on the
back of the note, above the indorsement of Ennis Boggs to Mrs.
Robinson; but the writing seemed to be not as fresh as the writ-
ing of Ennis Boggs's indorsement. I do not recollect that Ella
P. Robinson made any statement whatever, as Ennis Boggs
usually transacted the financial business of Mrs. Robinson. * * *
Ennis Boggs stated that the $10,000 note was one that she took
in the matter of a sale of a farm in Delaware County, Iowa, as
part payment, and that she would indorse on said note $6,000
payable to Mrs. Robinson, that she might give me security for
the loan I made to her. * * * The Warner note was shown to me
first by Ennis Boggs, and I have no recollection of seeing the

same in the possession of Ella P. Robinson at any time.''

It is shown without dispute that, in December, 1922, after the death of Ennis Boggs and before the death of Ella P. Robinson, the latter paid, or caused to be paid, her note to Jewell before it was due, and that the Warner note and mortgage were surrendered to Mrs. Robinson, or her brother, who furnished the money to pay her note. At the time of this transaction, the present action had been commenced; and Jewell testified that Mrs. Robinson then stated that, if Harris should win his suit for the remainder of the $10,000 due Ennis Boggs on the Warner note, she (Mrs. Robinson) would be out $6,000 on the transaction. There is no evidence that, prior to this, Mrs. Robinson had ever had possession of the Warner note, or that, prior to the time it was collaterated to Jewell, it had been assigned to her. The transaction at that time was clearly nothing more than an accommodation to Mrs. Robinson by Ennis Boggs; and no relation whatever to the check of $6,000, given some twenty months earlier by Mrs. Robinson to Ennis Boggs, is shown. With the indorsement of the note to Mrs. Robinson and her possession of it thus explained, we think she is shown not to have paid value for it. In the absence of any evidence that the check for $6,000 was in payment for an interest in the note, any other conclusion would be the merest conjecture, and unsupported by the record.

Moreover, in a letter to the bank to which Miss Boggs sent the original Warner notes and mortgage for renewal, as stated, she wrote, on February 4, 1919, in part as follows:

''You will note that the original mortgages in this matter were given to R. M. Merriam, and he in turn assigned the same to R. R. Robinson and myself. This assignment at this time has not been made a matter of record; and the notes secured by same are in Ella P. Robinson, devisee under the will of R. R. Robinson, and myself; and the new loan was taken in my own individual name, as per the agreement with Mrs. Robinson and myself.''

This is entirely inconsistent with the claim that Mrs. Robinson acquired an interest of $6,000 in the renewal note of $10,000 on March 3, 1919, by purchase from Ennis Boggs.

Some claim is made in argument for the intervener that

Mrs. Robinson was the owner of the note, or an interest in it, by inheritance or bequest from her husband, whose name appears as an indorsee on the original notes. No such claim is presented in the pleadings, either in the original petition of intervention filed during the lifetime of Ella P. Robinson, or in amendments filed by her, or in a second amendment filed by her executor after his substitution. But, aside from that, it is clearly shown that the original notes for $19,100 belonged to Harris; that they were sent by him to Miss Boggs, to be renewed; and that the indorsement as it now appears on them is fraudulent.

That Miss Boggs dealt fraudulently with those who intrusted their money to her for investment is apparent; and it may be conceded that her relations with Harris were such that she might have transferred the note and mortgage in question to a good-faith purchaser for value, without notice of his rights therein, and that such purchaser's right would have been superior to those of Harris; but we are of the opinion that, upon the whole record, it is shown that Mrs. Robinson did not pay value, and was not, therefore, such a purchaser of the note and mortgage in question. The rule that, where one of two innocent parties must suffer from the fraud of a third party, that one who placed it in the power of such third party to perpetrate the fraud must bear the loss, finds no application to such a situation.

Nor we do perceive any element of estoppel. Harris intrusted his notes and mortgage to his agent for renewal, who took the renewal in her own name. Whether this was with his authority or not, does not appear; but if it was, we think it could not affect the rights of the parties. The agent wrongfully and without authority indorsed the note to the extent of $6,000 to Mrs. Robinson for the latter's accommodation, and without the payment of value therefor. If she did not pay value for the note, she is not a good-faith purchaser, and is in no position to claim, by estoppel or otherwise, any rights superior to those of the real and equitable owner of the note and mortgage.

4. ESTOPPEL: equitable estoppel: agent taking note in own name.

This conclusion renders it unnecessary to consider other questions presented, as between intervener and the defendants Warner. The court, on the plaintiff's claim for judgment

against the Warners for the amount due on the note, held a tender by the latter sufficient; and neither of such parties appealed. The judgment against the interevener is—*Affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.