W. H. KOWALKE, Appellant, v. LOTTA B. EVERNHAM et al., Appellees.

No. 40407.

OCTOBER 21, 1930.

*Milchrist, Schmidt, Marshall & Jepson,* for appellant.

*W. V. Steuteville,* for appellees.

KINDIG, J.—In effect, as stated in the preamble, the proceeding hereunder reviewed was an action by the plaintiff-appellant for alternative relief against the defendants-appellees as follows: First, the specific performance of a real estate contract; or, second, the foreclosure thereof; and, or, third, judgment for the amount due thereunder. Two written agreements are involved, but the latter is really supplemental to the former, and the instruments do not in any material way conflict. Both Lotta B. Evernham and Furman H. Evernham, appellees, together with the appellant, Walter H. Kowalke, signed the first contract; while the appellee Lotta B. Evernham, the appellant, Walter H. Kowalke, and his wife, Mary Kowalke, signed the second agreement. Furman H. Evernham, the appellee, therefore, did not become a party to the second writing. The real estate involved consists of two lots, and they are located in Leeds, a suburb of Sioux City. There is a garage building upon the lots.

Lotta B. Evernham, the appellee, is the mother of Furman H. Evernham, a minor, 18 years of age. For a period of approximately nine years, the appellee Lotta B. Evernham was the duly appointed guardian of the minor. The guardianship proceedings were pending in the district court of Mills County.

After graduating from the Central High School, in Sioux City, during January, 1928, Furman desired to enter business for himself. He had taken a three-year course in automobile mechanics at the high school, and furthermore, the boy had actual experience in garage work for a period of about nine months. Appellees lived at Leeds. So, also, did the appellant. Their respective homes were 10 or 12 blocks apart. A Mr. Mammen operates a bank in Leeds, and the guardian went to

the bank for the purpose of making inquiry concerning the purchase or leasing of a garage. Thereupon Mammen stated that the appellant had a garage for sale, which could be purchased for about $5,000. At Mammen's suggestion, he was to investigate the possible purchase. Following an interview with appellant, Mammen reported to the guardian that the garage could be purchased for $7,500, plus the invoice price of the equipment. Mammen knew of the guardianship, and had assisted the guardian in making her reports. During her interview with Mammen, the guardian made it plain that she intended to invest the ward's funds. Appellant also, according to the testimony of the appellees, understood that the guardian was buying this property with the ward's money. Finally appellant's proposition was accepted, and the contracts aforesaid entered into.

As previously stated, the first agreement was signed by the minor. This was done at the request of Mammen, who explained that the signature was desirable because the boy was going to run the business. When the second agreement was executed, appellees made inquiry regarding whether the ward was to sign it, and Mammen suggested that, he being a minor, it was not necessary. Each contract was drawn by Mammen, and, after the transaction was completed, appellant paid Mammen $200 for his services.

It was the ward who made the principal inspection of the property, and likewise he assisted with the invoice. $1,000 was paid by the guardian on the real estate, and approximately $1,942.09 on the personal property. Thus the aggregate sum paid by the guardian to the appellant under the contract was approximately $2,942.09. According to the written agreements aforesaid, the balance of the purchase price for the lots, over and above a first mortgage of $2,500 thereon, was to be paid at the rate of $500 semiannually, payable September 2, 1929, and every six months thereafter. An assumption by the guardian was made of a first mortgage on said real estate, amounting to $2,500, as before indicated. Soon after the invoice was completed, the appellant delivered the keys for the garage to the ward, who then took possession thereof. Thereafter, for a period of four months, the ward continued to operate the garage, after which time he and the guardian learned that the price was excessive, and that the action of the guardian in making

the purchase had not been authorized or approved by the district court having charge of the guardianship. Hence the appellees offered to return the real estate and the personal property remaining at that time, which, under the evidence, was practically the same as when purchased.

The district court denied the specific performance prayed, and absolved appellees from any liability on the contract. Moreover, that court permitted the ward to recover from appellant $2,600, plus interest, to compensate for the guardianship funds used in the premises. No claim is made by the appellees that the amount thus awarded was not sufficient, and the appeal, therefore, does not involve the apparent discrepancy between the amount thus awarded and the $2,942.09 paid, as previously shown. Consequently we do not discuss that proposition.

I. Concession is made by appellant that the contract does not bind the minor. Likewise, appellant concedes that he is not entitled to relief of any kind against the minor, because the guardian acted without authorization from any court. With that concession on appellant's part, it is evident that further discussion of the proposition is not necessary.

II. Objection is made by the appellant, however, because the district court allowed the minor to recover the $2,600 aforesaid. Such recovery in behalf of the ward, appellant suggests,  should be made from the sureties on the guardian's bond. For authority to support his proposition, appellant relies upon *Smith v. Crawford County State Bank*, 99 Iowa 282, and *Harris v. Warner*, 199 Iowa 1000. Manifestly, the facts in the cited cases are not similar to those in the controversy before us.

In *Smith v. Crawford County State Bank* (99 Iowa 282), supra, there was a contest between first and second mortgagees over the proceeds of cattle covered by the respective mortgages. Apparently the first mortgagee agreed with the mortgagor that the cattle should be sold by the latter, and the proceeds therefrom deposited in the second mortgagee bank, for application on the note covered by the first mortgage. Succeeding the sale, the proceeds were deposited with the second mortgagee bank, but that institution did not know the purpose of the deposit, and applied such proceeds on the second mortgage. While discussing

the proposition, we said (99 Iowa, reading at the bottom of page 291):

"* * * we [the court] are still of the opinion that the defendant bank [the second mortgagee bank] had no notice of such a trust relation [that described above, between the mortgagor and the first mortgagee], nor of facts that should be held to have put it upon inquiry."

*Harris v. Warner* (199 Iowa 1000), supra, likewise is readily distinguishable. There, an agent for the actual owner of the note became the payee therein, and, without the actual owner's consent, indorsed and sold the note. The contest was waged between the actual owner and the indorsee. During the discussion, the following quotation was given approval, at page 1003:

"Equity will not impress a constructive trust upon property that has passed into the hands of a good-faith purchaser for value, without notice."

Continuing, we further said in the *Harris* case that a purchaser without value was not protected as against the beneficiary under the trust.

Obviously, the facts in the *Smith* and *Harris* cases are entirely different from those involved in the present dispute. Before us in the case at bar is the situation where the appellant knew that the guardian was attempting to purchase real estate with funds belonging to the ward. This action on the guardian's part amounted to the management of the ward's estate, and could not be done without an order of court. Section 12581, 1927 Code; *Andrew v. Farmers Sav. Bank,* 207 Iowa 394; *In re Estate of Wisner,* 145 Iowa 151; *Easton v. Somerville,* 111 Iowa 164 (local citation. 172, 173). Necessarily, then, the purported contract was absolutely void, so far as the minor is concerned. Under this record, so far as the minor is concerned, appellant is presumed to know that the guardian did not have authority to purchase the property and the garage equipment. *Bates. v. Dunham,* 58 Iowa 308; *Easton v. Somerville* (111 Iowa 164), supra. Our declaration in the *Easton* case, supra, was:

"He [the party with whom the guardian dealt] is presumed

to have known that the guardian had no authority to make the purchase."

Because of the foregoing facts and circumstances, the appellant must "hold the money received [from the guardian] in trust for the benefit of the ward." *Easton v. Somerville* (111 Iowa 164), supra.

Within the purview of this record, then, it is apparent that the district court rightfully gave the ward and his guardian judgment against the appellant for the moneys thus received through the unauthorized transaction. There is no ground for reversal because of the district court's action in that respect.

III. Assuming that he has no cause of action against the minor, and that the minor and his guardian may recover the guardianship funds wrongfully paid under the unauthorized  contracts, yet appellant argues that he does have an action against the appellee Lotta B. Evernham, because she personally signed the contracts agreeing to buy the lots and garage equipment. Her liability, appellant maintains, is a personal one on the contract. According to the form of the agreement, this is true.

By way of answer to this claim, the appellee guardian states that the contracts, as they were signed, do not contain the real agreement between the parties. She says that the true and only understanding between her and appellant had to do with the purchase of the property with the minor's funds, under the guardianship for the ward alone. Also, this appellee declares that she was conducting herself as guardian only, to bind the ward's estate, and acted not in an individual capacity in such a way as to become personally liable in the transaction. So, in accordance with the alleged understanding, the appellee guardian prayed for a reformation of the contracts and the bill of sale conveying the personal property, in order that the true intention of the parties would clearly appear in those instruments. By its judgment and decree, the district court dismissed appellant's petition, and denied him the relief therein prayed. Support for the district court's action can be found if the contracts and bill of sale are reformed as asked by the appellees. Before such prayer for reformation can be granted, the proof must be clear, satisfactory, and convincing. *Rankin v. Taylor,*

204 Iowa 384 (local citation 387). We said, during the discussion in the *Rankin* case:

"Reformation of a written instrument is to be made only when there is proof that the intention of the parties was to make an agreement such as it is sought to have established, and that said intention was frustrated either by fraud, accident, or mutual mistake. * * * Evidence required in such instance must be clear, satisfactory, and convincing. * * * Necessity of the occasion has not been met where the evidence is in equipoise, or where there is a mere preponderance in favor of the party claiming reformation."

This is a trial *de novo*, and a review of the entire record will be made. Mutual mistake, appellees declare, is the basis for reformation in the case at bar. As before disclosed, Mr. Mammen, the banker at Leeds, drew the various instruments for the parties. Some dispute arises concerning whether he was agent of the appellees or the appellant. Manifestly, appellant paid the commission, and it does not appear that Mammen in any way represented the appellees, except to get them in touch with appellant, who, as before said, paid the commission for the transaction. In any event, Mammen knew of the guardianship, and understood that the guardian was using the minor's funds with which to make the purchase. Not only did Mammen have such knowledge, but it is a fair inference from the entire record that the appellant likewise knew that the guardianship existed, and that the trust funds were being used in making the purchase. Appellant denies that he had such information, but the testimony of the appellees and all the facts and circumstances surrounding the transaction indicate that he did have the knowledge. Mammen, the banker, did not testify. Repeatedly, however, the appellee guardian told Mammen and the appellant that the money going into the transaction was not hers. Excerpts from the guardian's testimony will enlighten at this juncture. While on the witness stand, she said:

"I told them [Mammen and appellant] Furman was a young boy, and I was using this money of Furman's to make the $500 initial payment; that it was coming from his money. They [Mammen and appellant] said they knew it was Furman's money, and not mine, that was going into the deal. I told Mr.

Kowalke [appellant] and Mr. Mammen [the banker] both I was buying it for Furman, with Furman's money.''

To the same effect is the testimony of the ward, who made the following statements:

''My mother said it was my money which she wished to invest in the business for me. Mr. Kowalke [appellant] was present at that time, and could hear it. * * * Yes. My mother said that, being I was under age, * * * she was taking my money * * * and investing it in this business for me. She told that to Mr. Mammen [the banker] and Mr. Kowalke [appellant].''

There appear in the record many other statements and declarations of these witnesses to the same effect. Moreover, the guardian drew trust funds from points outside of Sioux City, and deposited them in Mammen's bank, in order to make the initial payments, and stated, in effect, to Mammen and appellant that such drawing and accumulation of funds were necessary. Furman Evernham, the minor, was at all times active in the transaction. His mother merely acquiesced therein. It was the boy who made the principal inspection of the premises before the purchase, and helped make the inventory of the personal property, as previously stated. Also, the minor was required to sign the first contract. When the transaction was completed, appellant delivered the keys to the minor. No reason appears why the mother should have kept the guardianship a secret. Immediately after the deal was closed, the guardian attempted to obtain proper approval of her action in making the purchase, but failed to do so. Furthermore, the record at other places indicates that appellant understood that the mother was acting in the transaction in her guardianship capacity.

Clearly, appellant knew that the mother was utilizing the guardianship funds to make this purchase for the boy. Thus he intended she should do. Neither appellant nor the guardian understood that the latter was to use her personal funds. Each knew that the ward's money only was to be invested. And it was in that way that appellant and the guardian agreed to consummate the purchase. Their purpose in the premises was thwarted by mutual mistake in preparing the form of agreement; for, as drawn, the contract indicated personal, as distinguished from guardianship, liability. The evidence of such

mistake is clear, satisfactory, and convincing. Therefore the proof is sufficient. *Rankin v. Taylor* (204 Iowa 384), supra. Because of such error, the contract as written does not express the true intent and purpose of the parties. In its present form, the contract is not the real agreement entered into by appellant and the appellee guardian. For that reason, equity, under the circumstances, will reform the instrument to make it express the true intention of the contracting parties. *General Motors Acceptance Corp. v. Baker Mfg. Co.,* 199 Iowa 155 (local citation 161) ; *Bonbright v. Bonbright,* 123 Iowa 305 (local citation 309) ; *Bottorff v. Lewis,* 121 Iowa 27 (local citation 35) ; *Hausbrandt v. Hofler,* 117 Iowa 103.

Consequently the two contracts, as well as the bill of sale, should be reformed so as to indicate that the mother was acting in her guardianship capacity, and binding her ward's estate, rather than herself individually. Being thus modified, the contracts upon which appellant's petition was based do not support a recovery against the guardian personally. When duly authorized, a guardian, without becoming personally liable himself, may bind the ward's estate for an obligation. While such may not be the rule in other states (see *Kirk v. Mullen,* 100 Ore. 563 [197 Pac. 300]), it is the law of this state. *In re Estate of Harker,* 113 Iowa 584.

IV. Regardless of the propositions discussed in the foregoing divisions, appellant finally demands judgment against the appellee Lotta B. Evernham personally because she did not, as  guardian, obtain the court's authorization or approval for the investment of the ward's money. Conceding, without determining, that such failure would make the guardian liable (but see *Eggert v. Pratt,* 126 Iowa 727), yet that idea was not embodied in appellant's petition, nor was it the theory of the trial, as indicated by all the pleadings and the whole record.

Appellant, in his pleadings, stated but one ground for recovery, and that was a personal contract executed by Mrs. Evernham. Nothing anywhere was said concerning relief because she did not obtain authority or approval of her attempted action in the guardianship capacity. Without his having thus pleaded and raised the issue, the subject-matter is not in the case. But

thus deciding, we do not determine that a guardian has the legal right to invest his ward's funds in real estate, in view of Section 12772 of the 1927 Code. We, as do the parties, assume that such authority exists, and therefore will not indulge in a discussion of the proposition, because the parties have not raised or argued the point.

Wherefore, the judgment and decree of the district court is affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.