LOREN A. DECKER et al., appellees, v. E. A. JUZWIK et al., appellants.

No. 50802

(Reported in 121 N.W.2d 652)

MAY 7, 1963.

REHEARING DENIED JULY 16, 1963.

Arthur H. Johnson, of Fort Dodge, for appellants.

John H. Mitchell and Herbert R. Bennett, both of Fort Dodge, for appellees.

LARSON, J.—In this suit brought by Loren A. Decker, his wife Jennis Irene Decker, Oral Musick and Willard Musick, appellees, for specific performance of a contract for the sale of a boat business in Fort Dodge, Iowa, against E. A. Juzwik, Frank L. Juzwik and Glass Craft Corporation of Illinois, appellants, the trial court found appellants had breached a purchase agreement of October 15, 1956, between the parties, and decreed specific performance and set out the method of performance. Defendants-appellants appeal.

Appellants' propositions relied upon for reversal are (1) that "The Court erred in requiring the Juzwiks to put up $30,000 for a fund from which to pay the unsecured creditors of Glass Craft Corporation of Iowa and the taxes owing by it to the government", and (2) that "The Court erred in holding that Glass Craft Corporation of Illinois must pay off the balance due on the note at the bank" and that it "further erred in holding that any deficiency remaining after exhausting the assets of Glass Craft of Illinois, must be paid out of the $30,000 fund."

In view of the fact that this appeal is tried before us de novo, a rather extensive statement of facts seems necessary. Although there are only a few areas of factual dispute, some of them play a vital part in the determination of these issues.

Being convinced of their practicability, Oral and Willard Musick in 1954 decided to build fibre glass boats for commercial sale. Each invested $8000 in the business and persuaded Loren Decker to put $10,000 into this venture. Glass Craft of Iowa was incorporated and operated out of two buildings about 80 x 80 at the old Eno Airport in Fort Dodge. While no stock certificates were issued, it was agreed that each of the Musick brothers owned 25% of the corporation and that Loren Decker and his wife owned the other 50%. When more money was needed in the operation, Decker loaned the corporation $41,536 and took a note and chattel mortgage on the corporate assets. Although fibre glass boats were new, over 800 boats were made and sold in 1955. Between January 1, 1956, and October 1, 1956, some 1500 boats were made and sold, although on April 4, 1956, a fire in one of the buildings destroyed about 50% of the supplies and working tools. Even though no insurance was carried, many of the lost items were replaced and the company was back in operation in 30 days. While physical recovery was adequate, the financial loss left the corporation little or no operating capital, and in the summer of 1956 negotiations were commenced for the sale of the business.

The corporation owed taxes to the Federal and State Governments of some $5500, a secured note to Loren Decker in the sum of $41,536, a note to the Union Trust and Savings Bank of Fort Dodge in the sum of $29,927.68, and unsecured creditors in a substantial sum estimated at about $40,000. Decker did not wish to advance any more money in that business, but wished to dispose of his interest and liquidate his liability for the taxes and the bank note upon which he had signed as surety.

Defendant Frank Juzwik, employed as general manager of a Fort Dodge plant, and his brother Ed Juzwik, of Chicago, became interested in the enterprise and, after several meetings with the plaintiffs, decided to buy the business. On October 15, 1956, all parties met at Fort Dodge and signed Exhibit 1, a revised copy of an agreement prepared by Atty. Herman E. Klein of Chicago, who was there representing the Juzwik brothers.

The pertinent part of Exhibit 1 as signed by all parties

provides that the Deckers, owners of 50% of the stock of Glass Craft Corporation and holders of a chattel mortgage, as above set out, wish to sell same to the Juzwiks, that O. Musick and W. Musick, each an owner of 25% of the corporation, desire to sell one half of their interest in the corporation to the Juzwiks, that the Juzwiks desire to buy those interests, and that the sellers were to transfer those interests to the buyers, the Juzwiks. The Juzwiks were to pay and did pay to the Deckers $300 for their share in the corporation, and $100 to each of the Musicks for one half of their shares. These sums in turn were to be paid to the bank to apply on the Glass Craft Corporation note. This was done.

In addition, the agreement provided the "Buyers hereby agree to deposit in a special account a sum of money equivalent to the value of the inventory of raw materials, work in process and supplies, computed at cost or market, whichever is lower, as of the close of business on October ...., 1956, which moneys are to be used for the sole purpose of effectuating a compromise and settlement with all of the unsecured creditors of said Corporation and to pay all costs and expenses thereof." This was not done.

The agreement further provided: "Sellers hereby represent and warrant that as of the close of business on October ...., 1956, said Glass Craft Corporation was indebted to its unsecured creditors in the aggregate sum of $............ and was indebted to the Director of Internal Revenue and the Director of Unemployment Compensation Taxes, of the State of Iowa, in the aggregate sum of $............ including penalties and interest to October ...., 1956. Sellers hereby agree that the Buyers, their nominees or assigns, shall have the sole right to effectuate a compromise with all the unsecured creditors as they, in their sole discretion, deem advisable and feasible."

It also provided that the sellers, who were to pay all the taxes owed by the corporation, "will sell at the best prices obtainable, for cash, all of the existing finished inventory, the proceeds of which shall be used to pay in full Federal withholding, Old Age Benefit and Iowa Unemployment Compensation Taxes, including penalties and interest thereon," and that

any surplus remaining shall be paid to the bank to apply on the note of the corporation. This was partially done.

The buyers were to pay the Deckers $2000 as the purchase price of their chattel mortgage note and mortgage, and the same were to be endorsed to them without recourse. This was done and, as provided in the agreement, the Deckers applied that sum upon a promissory note of the corporation held by the Fort Dodge bank.

In addition, the buyers agreed to form a corporation under the laws of Illinois "to be known as Glass Craft Corporation, and they hereby agree that said Corporation will assume the payment of the principal and interest due on the Note executed by Glass Craft Corporation (of Iowa) to The Union Trust and Savings Bank of Fort Dodge, Iowa, on which the Sellers are personally liable. Payments thereon shall be made by Glass Craft Corporation (of Illinois) on the basis of Ten Dollars ($10.00) received from the sale of each fabricated boat and the aggregate of such amounts shall be paid, monthly, on or before the 15th day, to Union Trust and Savings Bank of Fort Dodge, Iowa, to apply on interest due on said Note and the balance on the principal until the entire principal due shall have been fully paid." This was not done, although some $7750 was paid by the Illinois corporation at various times from May 15, 1957, until July 1, 1958, when it was discovered the note had been renewed several times, dropping the Glass Craft Corporation of Iowa as the primary obligor.

The agreement further provided the sellers were to resign as officers and directors of Glass Craft of Iowa and turn over to the buyers all the books, records and other personal property of that corporation. This was done.

It therefore appears, without dispute, that the buyers (1) have failed to deposit any sum of money in a special account to be used for paying or effectuating a compromise and settlement with unsecured creditors, (2) have failed to liquidate the obligation to The Union Trust and Savings Bank of Fort Dodge, Iowa, and (3) have failed to keep their promise to sellers to pay the Federal Withholding taxes, Federal Old Age Benefit taxes, and the Iowa State Unemployment Compensation taxes due and

owing by Glass Craft Corporation of Iowa as of October 15, 1956.

The buyers operated the old corporation for some five months, then set up the new corporation, and foreclosed their chattel mortgage against all the assets of the Glass Craft Corporation of Iowa in February 1957. Those assets were bought in by the Juzwiks for $5000 and were assigned to the Glass Craft Corporation of Illinois.

Perhaps reference to a second contract, also executed on October 15, 1956, Exhibit 2, should be made at this time. It was an agreement between the Juzwiks and the Musicks making reference to the agreement Exhibit 1 regarding the transfer of stock and other matters. It related to the issuance of stock in the Illinois corporation to the Musicks and a manner of purchase of stock by them should they desire more. It further provided: "An employment agreement *will* be entered into with Musick [the Musicks] upon the election of Juzwik [the Juzwiks] to the Board of Directors of Glass Craft Corporation (of Iowa) and Glass Craft Corporation (of Illinois) upon such terms and conditions as shall be mutually acceptable to the Board of Directors of said Corporation or Corporations and to Musick [the Musicks]." (Emphasis supplied.) That employment agreement was never executed or agreed upon. Another paragraph of Exhibit 2 provided: "In consideration of the provisions hereinabove contained, Musick [the Musicks] hereby consents and agrees that they will not become associated either directly or indirectly, as an employee, shareholder, director and/or officer of any competing corporation within a period of three (3) years from the date hereof."

Pursuant to the execution of Exhibit 1, the Juzwiks took over control and management of Glass Craft Corporation of Iowa and operated it until the formation of Glass Craft Corporation of Illinois. Certain changes in personnel and sales policies were made and, when Glass Craft Corporation of Illinois took over the assigned assets, the Juzwiks continued its operation. Some success was achieved and in the period from October 15, 1956, until that corporation sold its assets in January 1960, after a fire at its establishment in Humboldt, Iowa, it made and sold some 2420 boats.

Being discontented with the profits, the Juzwiks, acting as directors of Glass Craft Corporation of Illinois, discharged the Musick brothers without cause in the summer of 1957, and they in turn established a competitive business of boat building called the Span America Boat Company, in Fort Dodge, Iowa.

It is appellants' contention specific performance should not be granted in this suit for the reasons that there is no sufficient showing (1) that the inventory at the date of the agreements October 15, 1956, was more than $2000, (2) that they interfered with the payment of the taxes from the sale of boats prior to October 15, 1956, (3) that they agreed to make payments on the bank note at the rate of $10 per boat manufactured and sold, or that they assumed the whole obligation. They argue that when the bank note was renewed in 1957, by dropping the primary obligee they were relieved of the obligation to pay on it, and that since the two agreements must be read together, the Musicks breached them by establishing a competing boat company in Fort Dodge within three years after their separation from Glass Craft Corporation of Illinois.

The trial court found no merit in defendants' contentions as to their assumption of the bank indebtedness, nor as to their liability to pay the taxes accrued against Glass Craft Corporation of Iowa on October 15, 1956, and we are inclined to agree. We are unable to concur in the court's disposition of the alleged agreement to compromise and settle claims of unsecured creditors.

I. Review in equity is, of course, de novo, and this is especially true where specific performance of a written contract is asked. Kowalke v. Evernham, 210 Iowa 1270, 232 N.W. 670; Rule 334, Rules of Civil Procedure; section 624.4, Code of Iowa, 1962; 49 Am. Jur., Specific Performance, section 22. In determining the parties' actual intent we give some consideration to the trial court's findings, especially where they are supported by substantial evidence. This too has limitations, for while equity may reform a contract to accomplish the clear intention of the parties, it cannot make a new or different contract for them. To reform a written contract for mistake, the facts necessary for the allowance of the remedy must be proven by clear

and convincing evidence and not by a mere preponderance of the evidence. Our search, then, is for the clear intention of the parties in the provisions of the written agreement and in the circumstances connected thereto (Aultman v. Meyers, 239 Iowa 940, 33 N.W.2d 400, and cases cited therein), for unless the precise act which is to be done is clearly ascertainable, specific performance will not be decreed. If it is clearly ascertainable, then the injured party may be entitled to recover that called for in the contract. Brennan & Cohen v. Nolan Laundry Co., 209 Iowa 922, 229 N.W. 321; Westerfield v. Liberty Oil Co., 208 Iowa 912, 223 N.W. 894; Drake Law Review, May 1958, No. 2, pages 3–10; 17A C. J. S., Contracts, section 458, page 589; Restatement, Contracts, section 314.

The rule, of course, is well settled that whenever an instrument is susceptible of different constructions and the parties do not agree thereon, evidence of the circumstances surrounding the parties and the transaction, as well as their conduct, is admissible as bearing upon their intentions. It is particularly applicable here and must be used to supply the dates and figures left blank in Exhibit 1. Aultman v. Meyers, supra.

In considering the problem relating to the establishment of a special account equivalent to the value of the inventory, etc. which was to be used for the "sole purpose of effectuating a compromise and settlement with all of the unsecured creditors" but which reserved to the buyers "the sole right to effectuate a compromise * * * as they, in their sole discretion, deem advisable and feasible", the trial court found the inventory at the time of the execution of this agreement, Exhibit 1, was at least $30,000. The contract itself provided only a blank for that figure. There was evidence this value was as low as $2000, but the greater weight of the evidence justifies the finding of $30,000, and we concur therein. There was testimony as well as documentary evidence that value was over $40,000, and that this fact was made clear to appellants at the time Exhibit 1 was executed.

We have more trouble following the trial court on its next step for there is no evidence, clear or otherwise, that would tend to establish the intention of the parties as to the amount each unsecured creditor should be paid, or within what period.

Appellants contend that provision of this part of the contract is unenforceable because it is indefinite, uncertain and incomplete. They correctly argue that, in order for a court of equity to decree specific performance of a contract, the court must be able to determine what must be done to constitute performance, and that indefiniteness of an agreement is an adequate reason for refusal to direct specific performance. 49 Am. Jur., Specific Performance, section 22. That it must be sufficiently clear and definite as to leave no reasonable doubt as to what the parties intended, and sufficiently certain as to its terms so the court may enforce it as actually made by the parties, cannot be denied. It is Hornbook law. What did they intend here? Actually the corporation was insolvent, and all its assets were covered by a prior mortgage. Only a moral obligation remained. There is no promise by the buyers to seek out those creditors, and their duty to do so is doubtful. While the evidence is sufficient to prove they knew who those creditors were, that alone is not sufficient.

While the evidence does establish that the parties intended the buyers would establish a fund equaling the value of the inventory, from which it would compromise and settle claims of unsecured creditors, nowhere does it appear on what basis they would be settled. The fact that this special account was not created seems of small import, for clearly the Juzwiks were to retain possession and control of these funds. The agreement is quite clear that the *sole discretion* in effectuating such compromises and settlements was left with the buyers, and neither the sellers, the creditors, nor the court could dictate the terms thereof. True, it appears the buyers had been furnished a complete list of these creditors and had verified the fact that over $40,000 was owed them. Under these circumstances appellants vigorously contend the trial court has made a new and different contract for the parties when it required the buyers to deposit $30,000 with the clerk of the district court as a fund to pay "reasonable expenses to be calculated and deducted, and a dividend to be computed and paid" the unsecured creditors, whoever they may be. Obviously, the evidence does not indicate any such agreement was contemplated by the parties. There is nothing to indicate any percentage of any claim or dividend to creditors will

be paid. It would therefore appear the trial court was making a new and different contract for the parties in that regard, and we must modify this portion of the court's decision. Under such circumstances the court should do no more than order E. A. Juzwik and Frank L. Juzwik to proceed in good faith to compromise and settle all unsecured creditor claims filed in the office of the Clerk of the District Court in and for Webster County, Iowa, before January 1, 1964, but in doing so they are not required to expend more than $30,000. This provision is made in view of the fact that defendants no longer have a place of business in said county, are out of business, and that a reasonable time for the performance of this promise was actually contemplated by the parties.

II. The next problem to be considered is the buyers' alleged obligation to pay the promissory note in the sum of $29,000 executed by the Glass Craft Corporation of Iowa to the Union Trust and Savings Bank of Fort Dodge, Iowa, upon which plaintiffs were guarantors. The evidence clearly discloses that the Juzwiks, as buyers, agreed to form a corporation under the laws of the State of Illinois and agreed it would assume the payment of the principal and interest due on the note. Paragraph 8(b) of the contract further provided payments were to be made "on the basis of Ten Dollars ($10.00) received from the sale of each fabricated boat", that payments were to be made "monthly, on or before the 15th day * * * until the entire principal due shall have been fully paid." After the corporation was set up, it did assume the obligation as promised by the Juzwiks, did make payments upon the note, although not at the times specified or in the amounts agreed. The trial court found this novation was sufficient to relieve the Juzwiks of personal liability for the payment of that note, except as they might be obligated to pay any amount the corporation was unable to pay from other designated remainders. We concur in that decision.

The evidence clearly supports a finding that the Glass Craft Corporation of Illinois did assume the obligation and made successive and substantial payments on the bank note. It accepted all the assets of the old corporation and to the extent of this provision we think it clearly ratified and adopted the contract.

Under the circumstances it was bound by the provisions of the contract relating to that obligation. Kridelbaugh v. Aldrehn Theatres Co., 195 Iowa 147, 191 N.W. 803; 18 C. J. S., Corporations, section 122, page 523; Annotations, 41 A. L. R.2d 477, 123 A. L. R. 726, and 49 A. L. R. 673.

 Appellees are not happy with the decision relieving the Juzwiks of personal liability. The question is not without difficulty, for it is the general rule that promoters are personally liable on contracts which they have entered into personally, even though they have contracted for the benefit of the projected corporation, and although the corporation has been formed and has received the benefit of the contract, and they are not discharged from liability by the subsequent adoption of the contract by the corporation when formed, *unless* there is a novation or other agreement to such effect. 18 C. J. S., Corporations, section 132, page 532. It is not greatly disputed that plaintiffs looked to the new corporation for payment of this obligation and, although it was not expressed, the intention was quite evident that payments were to come from the corporation on a stated basis and that plaintiffs did accept that method of payment rather than look to the promoters for payment. The question is largely one of fact. As bearing on this question, see Commercial Savings Bank v. Schaffer, 190 Iowa 1088, 181 N.W. 492; Mid-West State Bank v. Struble, 203 Iowa 82, 212 N.W. 377; King Features Syndicate v. Courrier, 241 Iowa 870, 43 N.W.2d 718, 41 A. L. R.2d 467; Restatement, Agency 2d, section 326. It must be remembered that since plaintiffs did not appeal they are not entitled to a more favorable decree here than they received in the trial court. Kellerhals v. Kallenberger, 251 Iowa 974, 976, 103 N.W.2d 691, and citations. Nevertheless, we are satisfied there was a novation and that the corporation did ratify and assume the obligation as provided in the agreement.

 Was that assumption and ratification conditional? Appellants contend under the clear language of the contract it agreed to make payments on the note *if* it made and sold boats, and then not to exceed $10 per boat, and that it could cease operations any time and avoid further liability. The trial court

thought such a construction would make the contract an illusory contract and that, if such were found to be the intention, the corporation's unlimited choice to perform or not to perform would amount to no promise at all and no contract. While there is evidence to support such a construction of this agreement, the greater weight of the evidence supports the view that the obligation to the bank was assumed to the extent of $29,000. Clearly, the plaintiffs' underlying purpose in the transaction was to relieve them as individuals of the indebtedness to the bank and to the government. This was the primary and understood consideration for the transfer to the buyers of the assets of the old corporation, its trade name, and its good will. True, an offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain, but the law endeavors to give a sufficiently clear meaning to such offers and promises. Restatement of the Law, Contracts, section 32, Comment b; 12 Am. Jur., Contracts, section 343. Here the contract provides in one paragraph that the corporation would assume the debt to the bank, and in the next paragraph provides how the debt was to be liquidated. There is no specific provision that, if not so paid, the corporation would be relieved of the obligation, and under these circumstances some such provision would seem necessary to achieve that result. To avoid an illusory effect and to give to this provision the fair and just construction intended, the trial court held, and we agree, that the first paragraph relates to substantive assumption of the debt and the second to the adjective manner of payment and nothing else. 12 Am. Jur., Contracts, section 252.

When the corporation sold its assets and ceased to operate prior to the payment of the bank obligation, it constituted an affirmative act which rendered substantial performance of its agreed method of payment impossible, thus constituting an anticipatory breach of the contract. Furthermore, it is undisputed the corporation had failed to make the promised payments on the 15th of each month as agreed, and had not paid $10 on each boat manufactured and sold. Had it done so, some $24,200 would have been paid on the note by it, and little would

have remained on January 1, 1960. The rules for determining the damages recoverable for an anticipatory breach, of course, are the same as in the case of a breach at the time fixed for performance. Restatement of the Law, Contracts, section .338. We conclude the corporation must pay the principal and interest on the bank obligation of $29,000 as set out in the contract. The original note carried five percent interest. Subsequent notes involved carried various rates, but it is clear the corporation must pay interest at only the five percent rate as expressed in the contract.

Appellants further contend if the corporation was liable to pay the debt of the Glass Craft Corporation of Iowa to the bank, that debt is no longer in being. It must be remembered that this note was a demand note. As a result of the bank's effort to keep it current, its officers considered the Iowa corporation defunct, and required the original sureties to execute new notes from time to time covering the same indebtedness and interest. Glass Craft Corporation of Iowa was dropped as the principal obligor on the latter notes, which gave rise to appellants' contention that the debt upon which they were liable has been extinguished. The contention is without merit.

 The general rule in Iowa is stated in Commercial Savings Bank v. Schaffer, supra, 190 Iowa 1088, 1094, 181 N.W. 492, where we said: "It is the rule that, where the note is given merely in renewal, and not in payment, the renewal does not extinguish the original debt or in any way change it, except by postponing the time of payment, and that the relation of the parties as to securities is not changed."

 As correctly pointed out by the trial court, the parties intended that the Illinois corporation assume the obligation to pay the debt owed to the bank. All parties knew the nature of that indebtedness and contemplated renewal notes would be required. The corporation assumed the *debt*, not the paper evidence thereof. The plain language of the agreement itself refutes appellants' contention, for it does not say the new corporation will pay the promissory note at the bank. It plainly states the corporation "will assume the payment of the principal and interest due on the Note." There is no contention any sum

is represented by the latest note beyond that of principal and interest on the obligation of October 15, 1956. Furthermore, no prejudice to appellants appears by these extensions of time for payment. They are not sureties in the sense that they must consent to such extensions. In fact, they may have been helped, not harmed, by an extended period for payment.

III. Next, we consider the appellants' contention that it was plaintiffs' fault, not theirs, that the corporate tax liability was not paid on or before October 15, 1956. It is not denied there were more than enough finished boats on hand a few days prior to October 15 to pay all those taxes, and while in paragraph (5) of Exhibit 1 it is stated: "Sellers, as the sole directors and shareholders of said Corporation, hereby agree that said Corporation will sell at the best price obtainable, for cash, all of the existing finished inventory, the proceeds of which shall be used to pay in full Federal Withholding, Old Age Benefit, and Iowa Unemployment Compensation Taxes, including penalties and interest thereon", and provides that any surplus remaining shall be paid to The Union Trust and Savings Bank of Fort Dodge, Iowa, to be applied on the note previously referred to, the fact is that the boats were sold for much more than the taxes then due, and the receipts therefrom of some $6000 or $7000 were placed in the operating fund of the Glass Craft Corporation of Iowa which was turned over to the buyers two days later. Only $2500 was paid on the tax accounts from that operating fund. The Musicks testified it was at the special insistence of the Juzwiks that this change was made, and there was no denial by them. Their promise must be fulfilled. The Juzwiks intended to furnish additional capital and expected to get it from the sale of stock. Capital was desperately needed at the time, and they apparently could furnish only a few hundred dollars to get needed supplies held up for the lack of cash payment. It was, therefore, at the buyers' request that this money was "borrowed" until the new management could get going. The express intention was that the Juzwiks were to replace it and pay up the tax accounts as soon as the new capital was available. Sometime later when it became available, they breached the agreement to pay up the delinquent tax accounts and apply the surplus to the

bank debt. We find no merit in the contention that the Musicks were parties to this departure and received some of these funds as wages and expenses. The sum they received was, of course, negligible at most in salaries as a part of the subsequent operating expense, and the real obligors are the Juzwiks who failed to replace the amount "borrowed" and pay the various tax obligations upon which all plaintiffs are liable. The trial court was correct in holding the Juzwiks liable for the taxes in question, plus interest and costs.

IV. The trial court correctly held the two contracts, Exhibit 1 and Exhibit 2, which were executed simultaneously, were to be considered together. However, Exhibit 2 was an agreement between only the Musicks and the Juzwiks and did not concern the Deckers at all. In paragraph (4) thereof it provided: "An employment agreement will be entered into with Musick [the Musicks] upon the election of Juzwik [the Juzwiks] to the Board of Directors of Glass Craft Corporation (of Iowa) and Glass Craft Corporation (of Illinois) upon such terms and conditions as shall be mutually acceptable to the Board of Directors of said Corporation or Corporations and to Musick [the Musicks]. * * * (6) In consideration of the provisions hereinabove contained, Musick [the Musicks] hereby consents and agrees that they will not become associated either directly or indirectly, as an employee, shareholder, director and/or officer of any competing corporation within a period of three (3) years from the date hereof."

In August or September of 1957 the Musicks were discharged without cause, for apparently the new corporation had acquired their knowledge and know-how and desired to eliminate the expense of their salaries. No employment agreement as contemplated by Exhibit 2 had ever been executed, so it is reasonable to believe that the parties had contemplated an employment agreement covering at least the period of time when the Musicks were not to engage in competition with the Glass Craft Corporation of Illinois. Nevertheless, appellants contend that, although appellees performed all their other promises in both contracts, since the Musicks after their discharge did engage in the boat business in Fort Dodge, appellants are dis-

charged from all their promises under both agreements. Restatement, Contracts, section 279.

In this area of conditions in contracts, where one party makes a number of promises and the other party makes promises in return, the several promises usually constitute an agreed exchange. Restatement, Contracts, section 266(3). It is there stated: "Where in a bilateral contract two or more performances are promised by each party, promises of one or more of the performances on each side may be promises for an agreed exchange." See illustration, subsection (3).

We are satisfied the parties intended the employment of the Musicks by Glass Craft Corporation of Illinois for a three-year period, and that in return for the employment the Musicks would remain with the corporation and not engage in competition with it. They were "mutually dependent covenants", and when appellants discharged the Musicks without cause, the Musicks were relieved of their obligation not to engage in competition with the Illinois corporation. The cancellation of obligations does not upset the balance of the contracts, Exhibit 1 and Exhibit 2. Actually we agree with the trial court when it stated the appellants had received a large part of the contemplated consideration from the Musicks, for in the year past they had acquired the Musicks' knowledge of that business and its operation. Thus the promise not to leave their employment and compete was not such a material breach as would relieve the appellants of their duty to perform the balance of the contract. In Restatement, Contracts, section 274, it is stated: "(1) In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. An immaterial failure does not operate as such a discharge." In section 275 we find: "In determining the materiality of a failure fully to perform a promise the following circumstances are influential [listing six circumstances]." Comment (a) states: "It is impossible to lay down a rule that can be applied with mathematical exactness to answer the problem—when does a failure to perform a promise discharge the duty to perform the return

promise for an agreed exchange. * * * if the failure of a promisor occurs after part performance by him, the question becomes one of degree." Thus each case must stand upon its own facts and circumstances.

Here the record discloses that at the end of the year of said employment there were some 400 boat makers in the field, and glass boats were no longer a novelty. While the Musicks admit their operation of the Span America Boat Company in Fort Dodge did hurt appellants, we are satisfied the breach was not so material as would permit appellants to avoid these agreements.

V. As a final contention appellants claim they were defrauded by appellees. The facts do not sustain them. As they contemplated buying the Iowa corporation, the Juzwiks were aware Glass Craft Corporation of Iowa was in bad financial straits. They inspected the premises and the books and records on several occasions. No facts were kept from them. They knew the approximate amounts owed the Government for taxes; they knew of the bank debt, the extent of the physical equipment, and had a list of the unsecured creditors, a copy of the inventory on hand, and actually helped prepare one themselves. It cannot be said they were not fully advised as to the condition of the business. They knew it was sick, partly because of a fire earlier that year, but mainly because it was underfinanced. They actually obtained all the stock and equipment of Glass Craft Corporation of Iowa, and even obtained the use of moneys intended for immediate payment of taxes. Their obligations were held at a minimum.

After they took over and business began to pick up, they not only retained the Musicks as employees but increased their salaries, which are not the acts of a party defrauded. Then too, payments were continued at the bank until July 1958. The contracts involved had been prepared by appellants, although it is true there was one change made at the time of execution relating to the consideration for the Decker note and mortgage. It was insignificant. Great care was exercised in considering each provision and there is no claim of deceit therein. It appears to us the agreements were drawn to favor appellants, if they favored

anyone. There was no substantial evidence of appellee fraud. True, there was a dispute as to the inventory, but the record is clear that all items were not listed in the partial inventory taken by one of the Juzwiks and Decker just before the agreement was signed. The buyers were not interested in an accurate count at that time, for they had decided to accept the deal under consideration and wished to keep the inventory low for tax purposes. Appellants' purpose was to obtain all the assets of the old corporation and convey them to the new corporation with a minimum encumbrance. This they did by foreclosing the Decker note and mortgage, buying it in and assigning the assets to the new corporation. Their attempt to escape personal as well as corporate liability is reflected in the contract, Exhibit 1, where they reserved the right to settle all unsecured claims as they believed feasible, and in claiming the bank obligation was assumed only to the extent of paying $10 per boat produced and sold. Noticeable also is the fact that only Frank Juzwik testified on behalf of the appellants, and that E. A. Juzwik and their attorney Klein, who prepared the contract forms and could have shed light on the parties' intention at the time, did not appear or testify.

The claim of inequitable conduct on the part of appellees has no merit and they cannot be denied relief on the ground of fraud, actual or constructive.

VI. A decree of specific performance rests in the sound discretion of the court. Its object is to best effectuate the purposes for which the contract was made, and it should be granted upon such terms and conditions as justice requires. Restatement, Contracts, section 359. While no time limit was ever placed upon appellants in which to compromise and settle unsecured claims from a special account equal to the inventory, we think a reasonable time is contemplated, that January 1, 1964, will provide that time, and that in order to relieve themselves of personal liability for failure to act, Frank L. Juzwik and E. A. Juzwik must file a report with the clerk of court within thirty days thereafter showing a good faith effort to settle those accounts, regardless of any legal defense which may be a bar to action thereon. That is the tenor of their promise.

The Glass Craft Corporation of Illinois, which appears to have some $16,000 or $17,000 remaining in its accounts, shall pay to the Union Trust and Savings Bank of Fort Dodge, Iowa, the balance of principal and interest at five percent per annum on the debt assumed pursuant to the agreement, Exhibit 1, of October 15, 1956, in the amount of $29,000, and that on or before July 1, 1963, Glass Craft Corporation of Illinois shall file with the district court a report under oath that payment has been made or, in the event that it has insufficient assets to pay the same in full, that it has paid to the extent of said assets.

It is further ordered that defendants E. A. Juzwik and Frank L. Juzwik pay in full the taxes due for Old Age Benefits, Federal withholding, and Iowa unemployment compensations from Glass Craft Corporation of Iowa, as of October 15, 1956, together with interest and penalties to date of payment, which shall be not later than July 1, 1963.

It is further provided that should the settlement of unsecured creditors' claims not use up the $30,000 value of the inventory established herein, and the Glass Craft Corporation of Illinois does not have sufficient assets to pay in full the debt to the Union Trust and Savings Bank of Fort Dodge, Iowa, then in that event the unused portion of the $30,000 special account fund shall be used to pay the balance of the corporate obligation to the bank. In other words, the unused funds from this special account and from the remainder of the "borrowed" receipts from the sale of finished boats, after the payment of the tax liability of October 15, 1956, if any, shall be used for the payment of the balance, if any, of the bank debt. Since these funds are possessed by the appellants Juzwiks to the extent of the balances mentioned above, they shall be personally liable upon the unpaid bank debt, if any.

The cause is, therefore, remanded for decree in accordance with this opinion. Costs in this court shall be divided one fourth to appellees and three fourths to appellant.—Modified and remanded for decree.

All JUSTICES concur.