J. A. ROLAND, Appellee, v. L. MARKMAN et al., Appellants.
No. 39470.

APRIL 2, 1929.

*Hyman E. Miller*, for appellants.

*Mulvaney & Mulvaney*, for appellee.

KINDIG, J.—It appears that the plaintiff-appellee, who was engaged in the business of buying potatoes in carload lots and retailing them to consumers, purchased from the defendants-appellants, wholesale potato dealers, on November 6, 1926, a carload of "good, first-class potatoes, screened," to be delivered f. o. b. Stockport. The purchase price was on the basis of $1.45 per bushel. Delivery was made November 16th. When appellee attempted to make payment, he found that a sight draft attached to the bill of lading demanded a sum figured on the basis of $1.55 per bushel, instead of $1.45, as contemplated. Telegraphic communications then took place between appellee and appellants in reference to this subject, and finally a compromise was reached, whereby the price was fixed at $1.50 per bushel. Under the arrangement, however, appellee was to pay

the entire amount named in the bill of lading, and subsequently appellants were to refund 5 cents per bushel. Thereafter, appellee inspected the merchandise. This he did, according to his own language, as follows:

"I made a general examination, looked at them [the potatoes] from the doorway, and pulled a few sacks off the top, and I generally examined them on either end of the car, and they seemed to be all right. There were about three hundred sacks of potatoes in the car, and the car was an ordinary freight refrigerator car. It has a double wall and refrigerator at either end."

Then, on November 17th, appellee paid the full amount of the sight draft, and started to unload the potatoes. Two days later, 49 sacks of bad potatoes were discovered, "about middle way from the door to the end of the car." Appellee at once notified the appellants about the worthless potatoes, but the latter refused to examine or make adjustment. Consequently, the present action was brought by appellee against appellants, to recover $147 for the 49 sacks of unmerchantable potatoes, and $30 for the overcharge paid, in accordance with the compromise price agreement aforesaid.

I. Appellants at the inception contend that there is no evidence upon which the jury was justified in returning a verdict against them, because appellee did not prove that the potatoes were frozen before they reached Stockport. With this contention we are constrained to disagree. Throughout the record there is ample evidence to raise an issue on this subject. Testimony on the part of appellee himself was to the effect that:

"There was no cold weather that could freeze potatoes in a refrigerator at any time. * * * I know it was so warm that the potatoes would sweat in the car, and I raised the ventilators, to give them air. * * * The potatoes were field frozen potatoes. There had been a lot of it that fall. If they had been frozen in the car, they would have been solid. These potatoes were in a mush,—water all over the bottom of the car where they stood. You could tell that by the way the heat affected them. By my experience, I do not believe these potatoes were frozen after they reached Stockport. It couldn't be possible."

Furthermore, S. D. Bryson, the depot operator, said:

"The refrigerator [car] is built with heavy walls, and has air space between the walls. * * * The doors are air-tight, and the vents at the end for ventilation have blocks, when necessary to close them. * * * Ventilators would, of course, when open, affect the refrigeration, but not any great amount."

R. A. Workman, on behalf of appellee, asserted:

"These potatoes were soft and mushy and wet. * * * It was extremely warm in the car."

Of course, there was evidence offered by appellants to offset appellee's testimony in that respect, but the result of the conflict presented a question for the jury, and that body found for appellee. Under the circumstances, we cannot undo what it did.

II. Nevertheless. it is insisted by appellants that the trial court erred in refusing to direct a verdict in their favor. Basis for that redress is claimed because appellee had an opportunity to inspect the potatoes before accepting them. Such, appellants argue, is fatal to appellee's right to recover now. They say that appellee inspected at his peril, and if he did not examine every sack, he thereby waived any right to claim damages because the potatoes were not fit for human consumption.

Continuing their argument, appellants maintain that the implied warranty of quality did not survive appellee's "inspection," and therefore the rule of *caveat emptor* applies. No denial is made by appellants that there was originally an implied warranty. Their position in the premises is that such implied warranty ceased at the alleged inspection. Our further consideration, therefore, is narrowed to one question, which is: "Did the previously existing implied warranty survive the inspection?" In *Schopp v. Taft & Co.*, 106 Iowa 612, it was said:

"We understand the law to be well settled that, when goods are tendered by the seller in performance of an executory contract of sale, and accepted by the buyer after opportunity of inspection, without objection, the purchaser is liable for the price agreed upon, unless there be a warranty intended to survive the acceptance."

The *Schopp* case involved an action for the purchase price. Cases of that character are to be distinguished from those embracing controversies relating to damages for breaches of war-

ranty. *McClarran v. Longdin-Brugger Co.*, 24 Ohio App. 434 (157 N. E. 828). While inspection at the point of delivery will prevent rescission under certain circumstances (see Subdivision 3, Section 9998 of the 1924 Code), yet it will not necessarily bar a recovery for damages growing out of an implied warranty. Upon this phase of the subject, we declared, in *Loxtercamp v. Lininger Implement Co.*, 147 Iowa 29:

"Indeed, we think the duty of inspection upon receipt of the article purchased is applicable only to cases where the buyer undertakes to rescind his order or to exercise the right to return the property to the seller. He may, if he so elect, rest upon his right to damages for breach of the warranty and recoup therefor in an action against him for the purchase price, or he can maintain an independent action for damages, and in such proceeding it is immaterial that he did not inspect the article and ascertain the defects promptly upon its receipt."

Moreover, Section 9978 of the same Code reads:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

Said legislative enactment is supplemented by Subdivision 1 of Section 9998 of that Code, which is:

"1. Where there is a breach of warranty by the seller, the buyer may, at his election:

"a. Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price.

"b. Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty. * * * "

Also, significance is to be given to the fact that Subdivision 3 of the same section prevents a rescission if the buyer knew of the breach of warranty, but does not expressly prohibit an action

for damages in such event. Every indication is made, under this Uniform Sales Act, that acceptance with the knowledge of a breach of warranty prevents rescission, but does not interfere with an action for damages. Manifestly, the express language of the legislative enactment makes plain that acceptance will not bar an action for breach of warranty.

Hence, by clear statements, Sections 9978 and 9998, supra, affirmatively provide for an action in damages when an implied warranty is broken; and this is so even though there has been an acceptance. *Marx v. Locomobile Co. of America*, 82 Misc. Rep. 468 (144 N. Y. Supp. 937); *English Lbr. Co. v. Smith*, 157 N. Y. Supp. 233; *Majestic Coal Co. v. Bush & Co.*, 171 N. Y. Supp. 662; *Schram v. Guttenburg*, 198 N. Y. Supp. 209; 24 Ruling Case Law 239, Section 515. See, also, 1 Uniform Sales Laws, Annotated, published by Edward Thompson Co., page 182; *McClarran v. Longdin-Brugger Co.*, supra; *Wind v. Iler & Co.*, 93 Iowa 316.

*Majestic Coal Co. v. Bush & Co.*, supra, says:

"Section 130 [9978 of the Iowa Code] of the Sales Act provides, in substance, that an acceptance of the goods does not bar an action for damages by the buyer for breach of any promise or warranty, express or implied, in the contract to sell or the sale. By virtue of this section, an important change in the common law of this state was brought about, and neither express nor an implied warranty becomes waived by acceptance of the goods; and, as defendant correctly contends, it abrogates much of the early law. Under the common law of this state, only an express warranty survived acceptance of the goods; whereas now an implied warranty also survives."

Resultantly, the very purpose of the legislation considered, as well as the logic of the discussions in the foregoing authorities, makes it manifest that acceptance will not prevent an action in damages for the breach of an implied warranty. To put the thought in another way, the implied warranty will, under such circumstances, survive the acceptance. Appellee here immediately notified appellants of the breach, and consequently damages were recoverable for the frozen potatoes.

There is expressly reserved here any question relating to whether or not the agreement for an inspection amounted to a waiver, or made impossible the commencement or existence of an

implied warranty in the first instance, under Section 9944 of the 1924 Code. That point is neither raised nor argued, so we refrain from suggesting or passing any opinion upon it.

Wherefore, the judgment of the municipal court is affirmed. —*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, WAGNER, and GRIMM, JJ., concur.