LAVERNE KALTOFT et al., appellants, v. ALFRED H. NIELSEN et al., appellees.

No. 50098.

(Reported in 106 N.W.2d 597)

DECEMBER 13, 1960.

William O. Lewis, of Harlan, for appellants.

Hines & Higgins, of Harlan, for appellees.

More & More, of Harlan, for appellee Texaco, Incorporated.

LARSON, C. J.—Plaintiffs, as contractors, bring this action in equity under chapter 572, Code of 1954, to enforce two mechanics' liens for material and labor furnished by them in 1956 and 1957 in the construction of a Texaco service station in Harlan, Iowa, under a written contract of July 16, 1956, between them and the defendants Alfred H. Nielsen and Helen Nielsen. Plaintiffs' liens were for $6356.38 as the balance due

on the written contract, and $3051.17 for extras furnished for defendants Alfred H. Nielsen and wife and Texaco, Incorporated.

Defendants' answer denied any extras were ordered or furnished them except for $120 worth of grading, and by way of counterclaim asked $2100 for a seven-month delay in completion of the structure.

The trial court found that Texaco, Incorporated, had paid into the clerk's office $941.13 for extras ordered by it under Miscellaneous Bid and Work Contract, Exhibit 5, that with the exception of items of $120 and $8.10 ordered by defendants Nielsen they were not liable for the alterations and extras furnished by plaintiffs, that plaintiffs' failure to complete the structure within three months was such an unexcused delay as to justify a recoupment by said defendants of $1950, entered judgment for plaintiffs in the sum of $634.48 plus interest and costs, and ordered foreclosure of plaintiffs' superior lien on the property involved. The matter before us involves only issues between plaintiffs and Alfred H. and Helen Nielsen, so for convenience the Nielsens shall be referred to herein as "defendants."

Plaintiffs contend the evidence shows that extras were furnished at defendants' instance and approval, that the delays were occasioned by defendants' subsequent requirements, by changes in plans and specifications furnished by their lessee, Texaco, Incorporated, and were necessary to satisfy it as a prospective tenant, and by the State Highway Commission's work on the abutting streets. Furthermore, they claim that under a subsequent oral agreement plaintiffs allowed defendants a $100 credit to cover interest accruing on the Nielsen loan during the delay period.

I. Exhibit 3, executed by both parties, is a sworn construction statement dated June 28, 1957, required by defendant North American Life and Casualty Company to release the balance of its construction loan and, in effect, was an account stated as to all sums due plaintiffs under the contract. It was conceded in argument before us that the execution of that instrument by plaintiffs, showing a balance due them of $6456.38,

effectively bars any plaintiff recovery for extras. In addition, we are persuaded that, except for· two small items, no other sums were due plaintiffs at that time, and that plaintiffs had failed to produce any substantial evidence that defendants required or promised to pay for any changes or alterations in the station. We, therefore, conclude that the trial court's denial of plaintiffs' claim for extras was correct. The remaining issue involved is that of the responsibility for the delay in completion of the station. The trial court held plaintiffs solely responsible for the delay, but we cannot agree.

■ II. It is true that plaintiffs have the burden not only to prove the contract declared upon by them, but must also prove by a preponderance of the evidence their contention that the provision in the written contract as to time of completion was complied with, or that that requirement was excused or waived by defendants. If, as plaintiffs contend, such proof was furnished, defendants were not entitled to recoupment of damages for the delay. Lautenbach v. Meredith, 240 Iowa 166, 35 N.W.2d 870, and cases cited.

■ The question in the case, then, is one of fact as to whether the delay in date of completion under the contract terms was excused or whether the date requirement for completion was waived. As usual in such matters, there appears a wide divergence of testimony. The cause being in equity, it is our duty to consider and determine the matter for ourselves, although the opinion of the trial court on matters involving the veracity of witnesses is very persuasive. Nevertheless, conclusions to be drawn from all the evidence submitted in such matters are for this court alone, and in this case we believe the undisputed facts are significant.

From the record we learn that negotiations between the defendants Nielsens and Texaco, Incorporated, culminated in a written lease January 25, 1956, wherein the Nielsens were to erect a service station on their corner lot in Harlan and lease same to Texaco, Incorporated, for ten years "from and after the date certain improvements hereinafter provided for are completed by the lessor and accepted by the lessee, which date shall be established in writing." These improvements were to

conform to lessee's requirements and lessee furnished an inspector to oversee the work done.

Plans and specifications for the proposed station were furnished plaintiffs by Texaco, Incorporated, on January 10, 1956, but even before the construction contract with plaintiffs was signed there were discussions as to proposed changes in the plans submitted. It is clear, however, plaintiffs' bid was based upon the type and kind of material, as well as the amounts required in the original plans and specifications. Negotiations between the plaintiffs and defendants resulted in the execution of a construction contract, Exhibit 4, on July 16, 1956. A form contract provided by the Texaco people permitted no changes in the plans and specifications except on written order of the owner, and provided that the building and improvements shall be "substantially ready for occupancy not later than *a reasonable time or date not to exceed three months.*" The italicized words were inserted at the time of execution, and apparently were upon the request of defendants.

Work was started upon the structure immediately after the contract was signed. Very shortly thereafter a series of changes and alterations followed, none of which was upon written order of the owner. On September 21, 1956, a new set of plans and specifications, Exhibit 7, furnished by the Texaco people, was delivered to plaintiffs showing a revised general arrangement and an additional storage tank and suction lines to the pump stand. It was accompanied by a letter to the Nielsens, Exhibit 12, suggesting a continuous approach from State Highway 39, and stating these plans and specifications were to be followed exactly. Thereafter a revised plat plan with additional changes in elevation on the north portion, Exhibit 8, was submitted to plaintiffs. On September 28 and on October 3, 1956, extra foundation walls were installed through the overhead doorways which were not requested by defendants, but were approved by them and the Texaco representative. On October 2 and 3, 1956, improved interior footings were installed to prevent cracked footings and walls. Nielsen was advised it would increase the cost. On October 5, 6 and 8, 1956, more substantial sign bases deemed necessary were installed, with the approval of Nielsen

and the Texaco representative, as was extra work on refinishing the banjo signs. Between October 9 and November 11, 1956, the plaintiffs, after being delayed more than a month waiting on a relief valve to be furnished by the company, installed the additional 3000-gallon tank. The cost of this installation was later assumed by the company, but nothing was said as to the delay in construction. We note here that the three-month period set forth in the contract expired October 16, 1956, and that there was no claim that defendants protested the delay at that time. On October 22, 1956, a different type of drop inlet for drainage of the area was made necessary by changes in the approach to the station to meet elevations created by highway width changes, and on November 13, 1956, in compliance with State Highway Commission requirements, a revised plot plan was submitted by the Texaco company, which eliminated certain culverts. The next day plaintiffs installed an extra metal drain tube which was paid for as an extra by the Texaco company. After that, another revised plan, Exhibit 11, was submitted, and on December 28 and 29, 1956, plaintiffs, with the Nielsens' approval, installed as an extra a reinforced concrete sill in the sales area and added a reinforced bond beam masonry around the perimeter of the building. Between February 2 and May 15, 1957, plaintiffs, at Nielsens' request, installed a cast-iron cover over the meter pit, instead of a wooden one, poured an extra top coat to smooth up the interior floors for easy cleaning, changed the shelving arrangement in the service area, installed white pine door and window jams instead of inferior fir ones, cased in and paneled the entrance to a crawl space for storage, installed aluminum thresholds instead of rolled concrete ones, and installed white pine casings on interior doors instead of fir ones. On April 16 to 30, 1957, extra painting, not required in the original plan but which appeared in Exhibit 12, was applied. Extra installation of 800 feet of paving between the approaches was laid on April 25, 1957, and later paid for by the Texaco people. On May 6, 1957, plaintiffs installed guard posts along the edge of the driveway, which were also paid for by the Texaco people. During the period from February through May, State Highway 59 was being widened and work on the ap-

proaches was not considered feasible until the Highway Commission's work was done. On May 20, 1957, the station was completed and accepted both by the defendants Nielsen and Texaco, Incorporated. Mr. Nielsen said, "I have never complained on the work", but denied any of the improvements or changes were requested by defendants or that they promised payment therefor. It is defendants' contention that the changes did not substantially increase the costs, except those items required and paid for by the lessee, and that they did not substantially delay the erection of the station proper.

Laverne Kaltoft, one of the plaintiffs, testified that when he attempted to collect the balance of $6356.38 due under the contract on July 12, 1957, Nielsen refused to pay it, and that Nielsen then demanded a setoff for damages defendants suffered by the delay in completing the structure. Laverne claimed this was the first knowledge he had of defendants' claim of damage for delay. However, there was testimony that in the middle of November defendants' attorney had warned plaintiffs that such a claim for damages would be made; that Laverne then promised to have the structure completed by January 1, 1957, and when not so completed on that date, plaintiff Leland Kaltoft promised completion by March 1, 1957. When defendants refused to pay plaintiffs the final payment, liens were filed immediately and this foreclosure suit followed. Thereafter, the defendants paid an additional $4000 on the contract, leaving the balance due of $2456.38, minus the $100 promised by plaintiffs, plus any authorized extras, and this amount is the sum involved in plaintiffs' present claim.

■ III. The proper measure of damages for a completion delay in such a construction agreement is the loss of rental for the period of the unexcused delay by the contractors. Defendants offered acceptable proof that their loss was $300 per month, this being the amount of rent the completed station called for under their lease with Texaco, Incorporated. Darnall v. Day, 240 Iowa 665, 672, 37 N.W.2d 277, and citations. The trial court accepted this measure and allowed recovery of $300 per month for a six and a half month delay.

IV. Involved in defendants' right of recoupment for dam-

ages here are the meaning of the contract requirement as to the date of completion, a possible waiver of the delay by defendants, and the question as to whether the delay, if any, was excused or excusable. We cannot overlook the fact that continual changes in the plans, even after the time set for completion, had a delaying effect. Whether these things excused the entire delay or constituted a waiver by defendants are the vital questions.

■ ■ V. Recoupment is often spoken of as a partial defense, a rule of strict justice, a method to prevent a circuity of action. It is based upon the doctrine of failure of consideration. It looks through the whole contract, treating it as an entirety, and treating the things done and stipulated to be done on one side as the consideration for the things done and to be done on the other. When either party seeks redress for the breach of stipulations in his favor, it sums up the grievance on each side instead of the complainant's side only, strikes a balance, and gives the difference to the complainant, if it is in his favor. Lufburrow v. Henderson, 30 Ga. 482. It is a familiar rule in equity. Medart Pulley Co. v. Dubuque Turbine & Roller Mill Co., 121 Iowa 244, 96 N.W. 770.

■ ■ Waiver is frequently defined as the voluntary relinquishment of a known right. It is said, to be effectual, a waiver or a stipulation in an agreement must be made not only intentionally but with knowledge of the circumstances. This is said to be the rule, not only where there is a direct and precise agreement to waive the stipulation, but also where it is sought to deduce a waiver from the conduct of the party. No consideration is necessary between the parties to support a waiver. It may be by estoppel. 12 Am. Jur., Contracts, section 349, pages 912, 913.

■ Equitable relief is asked here and so we must consider not only the terms of the alleged contracts and the late completion of the project, but we must also take into consideration the surrounding facts and circumstances in resolving the question of waiver and of recoupment for an unreasonable delay, if any, especially when the claim is made prior to final payment on the contract.

■ It is stated in 12 Am. Jur., Contracts, section 343,

page 900: "Although a plaintiff is not absolutely free from fault or omission in every particular, the court will not turn him away if he has in good faith made substantial performance, but will enforce his rights on the one hand, and preserve the rights of the defendant on the other, by permitting a recoupment."

This is the problem at hand.

Plaintiffs contend that by a supplemental oral agreement, for the sum of $100, the date of delivery was extended, and that at the time it was so agreed it was clearly an impossibility to meet the date set forth in the original contract. They further contend that by the acts of the Nielsens and their lessee, whose requirements under the lease had to be met, the construction was delayed substantially, which obstruction itself waived the time requirements in the original agreement.

 The right to modify a written contract by a subsequent oral one is unquestioned. 20 Am. Jur., Evidence, section 1163, page 1016. We also recognize the rule that in all contracts there is an implied term that the person for whom the work is contracted to be done will not obstruct, hinder or delay the contractor, but, on the contrary, will in all ways facilitate the performance of the work to be done by him. 12 Am. Jur., Contracts, section 351, page 914; Haley v. Brady, 17 Wash.2d 775, 137 P.2d 505, 146 A. L. R. 859.

 It is the general rule that where a delay is due partly to the acts of the owner, the builder is not relieved from his contract, but the owner cannot recover for delays which have been caused by himself or by those for whose conduct he was responsible. The parties are taken to have understood that the contractor's time limit was prolonged by the extent of such delays. It is stated in 12 Am. Jur., Contracts, section 351, page 915: "Where a contract calls for completion of the work by a certain day, acts done by the employer which delay the contractor constitute an excuse for noncompletion on the day specified."

 Thus, it is clear that either by an oral agreement or by their actions, defendants could have waived the materiality of time in this contract. But did they? We are satisfied that by

the acts of defendants' lessee, for which they were responsible, the completion of the structure was delayed, and that defendants acquiesced in that delay, as they had to do under the strict requirements of the lease regarding the layout of the station, which certainly included the approaches and the pump islands outside.

From all the facts and circumstances surrounding this construction, we are also satisfied here that the defendants did intend to waive the provision of the contract calling for completion by October 16, 1956. However, it seems clear they did not intend to waive the requirement that the structure be completed within a reasonable time. This leaves for determination the extent of the delay that was attributable to defendants.

In such instances equity weighs the facts carefully to determine the extent plaintiffs were responsible for the delay. We think that period here should be fixed at four months.

In so deciding, we have not overlooked plaintiffs' contention that their offered and accepted sum of $100 to defendants was the consideration for a waiver of the entire time provision in the contract, but as both the established written contract condition and the actual term of the oral agreement are not clear, we conclude the extension granted was only a reasonable one. Nielsen himself admitted the $100 offer and acceptance, but claimed it was made to induce him to undertake the project when he expressed a reluctance to proceed due to the loss of interest he would suffer on a loan of over $23,000 during the construction period. However that may be, it would seem such allowance was intended at best to cover only a reasonable delay, and even if accepted as representing the amount necessary to cover the interest defendant would lose by a delay, it would be inadequate to cover a delay of nearly seven months.

It is our conclusion, therefore, that four months of the delay was not excused or waived by defendants, and the loss of rental at $300 per month for that period may be recouped by them in their counterclaim, that the acts of defendants and their lessee are responsible for about three months delay, and no recovery can be allowed for that time. Having so decided, the defendants' counterclaim of $1200 must be allowed, making a

balance of $1384.48 due plaintiffs and to which they are entitled plus 5% per annum from July 29, 1957. As so modified, the judgment of the trial court is affirmed. Costs are divided one half to each party.—Modified and affirmed.

BLISS, OLIVER, HAYS, GARFIELD, THOMPSON, PETERSON, and THORNTON, JJ., concur.

GARRETT, J., takes no part.