MORRIS PLAN LEASING COMPANY, appellee, v. BINGHAM FEED AND GRAIN COMPANY, appellant.

No. 51979.

June 14, 1966.

Rehearing Denied September 19, 1966.

Hurlburt, Blanchard, Cless & Porter, of Des Moines, H. E. De Reus, of Knoxville, and Life, Davis & Life, of Oskaloosa, for appellant.

William R. Crary and Silliman, Gray & Stapleton, all of Cedar Rapids, for appellee.

Mason, J.—Plaintiff brought this law action on a written agreement with defendant entitled "Lease Agreement" for balance of alleged rentals of $14,339.90. Trial to the court, after denial of defendant's jury demand, resulted in judgment for plaintiff of $8810.32 with interest from July 1, 1961, and for costs. Defendant appeals.

I. Before reciting the facts relevant to the various issues of the lawsuit, we consider appellant's first error relied on for reversal, the trial court's refusal to grant defendant a jury trial.

Plaintiff's petition as amended demanded judgment against defendant. Following the prayer of his answer defendant de-

manded a jury trial. Six weeks after replying to the affirmative defenses alleged in defendant's answer, plaintiff filed a certificate of readiness. Subparagraph 7 thereof requested assignment for trial by the court. A copy of the certificate of readiness was delivered to defendant's attorneys on March 23, 1964, two days after filing, as shown by the clerk's certificate.

March 27 defendant filed an application demanding a jury trial and informed the court a jury demand had previously been made by proper pleading. The same day the court denied the request as not filed within the time and form required by rule 177, Rules of Civil Procedure.

Plaintiff again filed a certificate of readiness with subparagraph 7 being identical with the previous certificate and it was mailed to defendant's attorneys. August 28 defendant filed a motion to reconsider the ruling of March 27 on defendant's demand for jury trial. Three days later defendant's application was denied.

Seven months later plaintiff again amended its petition and defendant promptly answered. Trial to the court followed.

 Defendant contends the trial court's refusal to grant it a jury trial constituted a technical abuse of discretion. The application was directed to the trial court's discretion. It not being made to appear that this discretion was abused, we will not interfere.

Rule 177, as it existed at the time of the filing of the petition in this cause, provided:

"177. Demand for jury trial.

"(a) Jury trial is waived if not demanded according to this rule; * * *.

"(b) A party desiring jury trial of an issue must make written demand therefor by filing a separate instrument clearly designating such demand not later than ten days after the last pleading directed to that issue. A copy thereof must be filed for each adverse party appearing and it shall be mailed or delivered by the clerk in the manner provided by rule 82.

"* * * (d) Notwithstanding the failure of a party to demand a jury in an action in which such demand might have been made of right, the court, in its discretion on motion and

for good cause shown, but not ex parte, and upon such terms as the court prescribes, may order a trial by jury of any or all issues."

Prior to July 4, 1961, subparagraph (b) of this rule provided:

"(b) A party desiring jury trial of an issue must file a written demand therefor, either by indorsement on his pleading, or within ten days after the last pleading directed to that issue."

This particular subparagraph was amended effective July 4, 1961, in an effort to achieve uniformity in making jury demands. Prior thereto the practice varied throughout the state; in some districts the demand was attached to various pleadings; in others, in the original notice, in the prayer of the petition or as a separate allegation embodied in the pleadings. This amendment was the result of detailed consideration by our advisory committee and by us. In 1945 subparagraph (d) of this rule was changed to give the trial court discretion in such matters.

In Katcher v. Heidenwirth, 254 Iowa 454, 462, 118 N.W.2d 52, 56, we considered subparagraph (d) of this rule. What was said there is appropriate here without repeating.

Defendant's demand following the prayer of the answer is not compliance with subparagraph (b) as amended.

II. Defendant is a copartnership composed of Lloyd Bingham and his son, Darl Bingham, engaged in the operation of a feed and grain business.

Barnard & Leas Manufacturing Company of Cedar Rapids consists of a number of divisions, one being the mobile division which assembles and manufactures portable stock feeding, grinding and blending machines mounted on a motor truck chassis. Prior to March 16, 1960, through calls of a sale representative of Barnard & Leas, defendant became interested in the unit which sold for $22,777. Defendant, being unwilling to put that amount into the unit, signed an order on the basis of a four-year lease calling for monthly rentals of $615 the first year, $570 the second year, $525 the third year and $480 the fourth year, a total of $26,280, plus a guaranteed residual resale value of $4277.

Barnard & Leas did business with plaintiff, a leasing company also of Cedar Rapids. Under the arrangement existing Barnard & Leas sold the unit to plaintiff for $22,777 and plaintiff became the contracting bailor with defendant for it under the written lease and addendum. It was signed and acknowledged under date of March 16, 1960, by Darl L. Bingham for defendant and provided for monthly rentals commencing March 17, 1960, continuing through March 17, 1964, and guaranteed residual resale value as set out in the order, exhibit 3. In addition the lease provided for a prepaid rental of $960 to extinguish the last two monthly payments and an option to extinguish the resale value of $4277 by 24 additional rental payments of $225 each and another option for 12 additional monthly payments of $25 each.

Under the written agreement defendant agreed to pay for repairs, licenses, insurance costs, etc. Paragraph 16 contained a disclaimer of warranty of any kind by plaintiff. There was a purported extension of manufacturer's or vendor's warranties. Barnard & Leas as the manufacturer had a limited express warranty as to the quality of parts for a period of 60 days and Ford Motor Company had a manufacturer's warranty, the exact terms of which do not appear. These were delivered to defendant by a service engineer of Barnard & Leas who also gave defendant and its employee, who was to operate the machine, two or three days instruction in its use.

Delivery of the unit was made in March 1960. Defendant paid $960 as prepaid rent for the last two months of the lease and thereafter made rental payments as required through July 1961.

On July 8, 1960, defendant complained the motor was overheating and an extra-bladed fan was installed to correct this difficulty. In November 1960 the first serious mechanical problem occurred when the diesel motor broke down. After notifying Barnard & Leas and plaintiff, defendant took the unit to Lehman Ford, Des Moines, for a major overhaul of the diesel motor at a cost of $500 which was paid by defendant and later refunded by Ford Motor Company. In March 1961 the diesel motor again caused serious difficulty and a new one was installed

by Ford Motor Company through a Ford dealer in Des Moines without expense to either party to this action. In June 1961 the second diesel motor broke down, or as defendant said, "It blew up." Defendant returned the unit to Lehman Ford in Des Moines and was advised by a representative of the Ford Motor Company that it would be reimbursed for repairs to the motor. Defendant, however, declined to accept the unit.

In addition to the above incidents mentioned in the trial court's findings, defendant had several other complaints about the unit, including the motor missing, as early as April 1960 which resulted in a repair bill of $120, trouble with the paddles in the mixer requiring new paddles, difficulty with the system of chains and sprockets which was replaced by a drive belt system, difficulty with the shifting mechanism from the power unit, breaking of shafts and bearings, problems which occurred "every week we had it in operation."

In April 1962 plaintiff received notice from Lehman Ford of the enforcement of its artisan's lien, advising the unit would be sold May 4, 1962, at ten o'clock, to satisfy the repair bill of $480.07 unless payment was made before the date specified. Plaintiff paid the repair bill, repossessed the unit and after Barnard & Leas reconditioned and repaired it, leased it to P. & H. Milling of LaHarpe, Illinois, November 12, 1962, through the efforts of Barnard & Leas.

III. Plaintiff's petition alleged default in the monthly rentals required by the written lease and asked judgment for $14,-339.90. Defendant's answer admitted execution of the lease and asserted as affirmative defenses breach of implied and express warranty. Plaintiff's reply specifically denied the affirmative matters.

The trial court awarded plaintiff judgment of $8810.32 with interest at seven percent from July 1, 1961, together with costs, arriving at this amount by charging defendant first with the total rental of $26,280 plus an item for repairs and licenses paid by plaintiff of $823.07 and deducting therefrom the total rentals paid by defendant of $10,005 and the recovery on the lease to P. & H. Milling up to April 1964 of $7310. The court disallowed a claimed item by plaintiff of $4724.90 for repairs paid by plain-

tiff to Barnard & Leas after repossession of the machine. The court also allowed defendant credit for payments by Ford to plaintiff of $977.75.

IV. This case is not reviewable de novo here but only on errors assigned. The evidence will be viewed in the light most favorable to plaintiff—this is also the light most favorable to the trial court's judgment. Its findings of fact have the effect of a special verdict and are binding upon us if supported by substantial evidence. Citation of authority is unnecessary. Rule 344(f) 1, Rules of Civil Procedure.

■ Our question is whether the trial court's findings are supported by substantial evidence, and we will not weigh the evidence or the credibility of the witnesses. Iowa Mutual Insurance Co. v. Combes, 257 Iowa 135, 131 N.W.2d 751, 752; Phoenix v. Stevens, 256 Iowa 432, 435, 127 N.W.2d 640, 642. The rule does not exclude inquiry into the question whether, conceding the truth of a finding of fact, a conclusion of law drawn therefrom by the trial court is correct, nor does it apply if in arriving at a finding the court erred in its ruling on evidence or in other respects upon questions of law which materially affect the decision. Alsco Iowa, Inc. v. Jackson, 254 Iowa 837, 840, 118 N.W.2d 565, 567.; Ferris v. Employers Mutual Casualty Co., 255 Iowa 511, 514, 122 N.W.2d 263, 265; France v. Benter, 256 Iowa 534, 536, 128 N.W.2d 268, 270.

In addition to the refusal of a jury trial, defendant assigns as errors relied on for reversal: (1) Failure to find defendant's liability was extinguished in the re-leasing of the unit to P. & H. Milling. (2) In sustaining plaintiff's objection to defendant's offer of exhibit "F", a letter from plaintiff's attorney to Barnard & Leas. (3) Failure to find breach of implied warranty on the rented unit and in affirmatively finding implied warranty did not apply. (4) In permitting plaintiff to recover for deficiency of rentals under the evidence, and (5) In awarding plaintiff interest from July 1961 at seven percent on the full amount found due.

■ V. Under the re-leasing agreement with P. & H. Milling plaintiff was to receive a total rental from the milling company of $18,000 in monthly installments over a four-year period

commencing November 12, 1962. P. & H. Milling guaranteed a residual resale value of the unit of $2250. Defendant contends under its first assignment it is entitled to receive credit for this $18,000 or so much thereof as would extinguish defendant's rental obligation under its lease with plaintiff for the balance of the term, whether such rental payments were paid by P. & H. Milling at the expiration of defendant's lease or not. The trial court found plaintiff had received $7310 under the second lease up to March 17, 1964, the termination date of the lease agreement with defendant, and in its judgment credited defendant with this amount. In computing the amount of its judgment, the court did not charge defendant with the guaranteed residual value provided for in defendant's lease.

Defendant urges in support of this contention there was an ambiguity in paragraph 13 of the lease, the material part of which we quote:

"* * * Lessor, at its option, may (i) lease the repossessed *unit*, or any part thereof, to any third party upon such terms and conditions as Lessor may determine, or (ii) sell the unit or any part thereof, to the highest bidder at public auction. The total proceeds, less Lessor's expenses incurred in connection therewith, including attorney's fees, of such sale or sales, less the estimated value of the *unit* at the end of the term provided for herein (as determined by the appraiser selected by Lessor), or of such leasing, applicable only to the balance of the term provided for herein, shall be applied to the total unpaid rental provided for herein. Lessee shall pay Lessor any deficiency."

Defendant's complaint is directed particularly to the phrase, "applicable only to the balance of the term provided for herein". It contends the court erred in adopting plaintiff's interpretation of this phrase "as meaning the rentals actually received by plaintiff from P. & H. Milling Company between November 12, 1962, the starting date of that lease, and March 17, 1964, the ending date of defendant's lease," rather than crediting the full proceeds to be received, an interpretation favorable to defendant. Defendant's argument is based upon the rule that where a contract is so ambiguous or uncertain that the intention of the parties is not clear, that interpretation of the doubtful language is to be

adopted the legal effect of which bears most strongly against the one who chose the words in question. 3 Corbin on Contracts, section 559. It is clear defendant neither prepared the lease nor furnished it for the transaction.

Plaintiff in support of the trial court's judgment asserts defendant, by raising the question of ambiguity, is merely injecting into the case the issue of satisfaction of its obligation, without pleading in compliance with rule 101, Rules of Civil Procedure, and seeks to indirectly inject a new issue in the case at this stage.

Plaintiff's original petition alleged in paragraph 6 its repossession of the unit and entering into a leasing agreement with another lessee. Defendant's motion to require plaintiff to set forth a copy of the leasing agreement with another lessee was sustained. Plaintiff's first amendment struck the original paragraph 6 and substituted the following:

"In November, 1962, in accordance with the terms of said leasing contract, the plaintiff repossessed said equipment from the defendants."

Defendant's answer admitted plaintiff's repossession. In a second amendment, paragraph 7, plaintiff alleged the amount claimed to be due and owing by reason of defendant's default and that defendant was entitled to a credit of $6660 to be received under the terms of the subsequent lease. Defendant denied "the contents of substituted paragraph 7". Certainly, the issue as to the amount of credit to be allowed defendant by reason of plaintiff's subleasing the unit was thus tendered as an issue.

Ambiguity may be said to appear when, after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one. Hubbard v. Marsh, 241 Iowa 163, 165, 40 N.W.2d 488, 490; Pedersen v. Bring, 254 Iowa 288, 294, 117 N.W.2d 509, 513. By "interpretation of language" we determine what ideas that language induces in other persons. 3 Corbin on Contracts, section 534.

"The question of interpretation of language and conduct— the question of what is the meaning that should be given by a court to the words of a contract, is a question of fact, not a question of law. * * * (L)ike other questions of fact, it may be a

question that should be answered by the judge rather than by the jury." 3 Corbin on Contracts, section 554. See also 17A C. J. S., Contracts, section 617. By "construction of the contract" we determine its legal operation—its legal effect upon the action of courts. Construction is always a matter of law for the court. 3 Corbin on Contracts, sections 534 and 554.

Assuming without deciding that the language in question here is ambiguous, we find no error in the trial court's interpretation thereof as the trier of the fact, nor in its determination as a matter of law of its legal effect. This assignment of defendant cannot be sustained.

VI. The letter, exhibit "F", dated May 26, 1963, is from Mr. Crary, plaintiff's attorney, addressed to Barnard & Leas. It contained the following statement:

"Pursuant to a written agreement, it was leased to Bingham Feed and Grain Company, Knoxville, Iowa. Your file concerning this vehicle will reflect the difficulties encountered with its operation after delivery. Numerous attempts were made to put the truck in operable condition without success, and the lessee finally refused to make further payments on the lease * * * lessee claims justification for its refusal to pay the rental based on the fact that the unit was not operable due to mechanical difficulties * * *.

"I am therefore making demand upon Barnard and Leas Manufacturing Co., Inc., for payment of the sum of $10,453.66. This sum represents the reasonable rental value of the unit plus interest."

It was stipulated the letter was written on plaintiff's behalf. Plaintiff's general objection of "incompetent, irrelevant and immaterial" to defendant's offer of the exhibit was sustained. Defendant's offer of proof stated as a purpose for its admissibility "* * * it contains statements recognizing a violation on the part of plaintiff of the implied warranty applicable to the machine." Defendant argues in support of this contention the statements contained in the exhibit were receivable as an admission of plaintiff, a recognition of defects in the equipment, difficulties incurred by defendant, failure to remedy the defects and reasons for defendant's refusal to make further rental payments after June 1961. It could be construed as a recognition defendant had a defense of breach of warranty to plaintiff's claims as asserted

and Barnard & Leas was the ultimate cause of defendant's difficulty.

Defendant further contends the court's refusal to admit exhibit "F" led to this erroneous conclusion of law:

"However, the reason given for not continuing to make the payments provided for in the contract was that the machine had almost broken defendants and if they took it back again they would be in bankruptcy. This refusal to make any additional payments under the contract was apparently because operation of the machine was proving to be an economical loss to the defendants."

The trial court erred in sustaining plaintiff's objection. The exhibit should have been admitted as it was material to prove a proposition in issue, i.e., plaintiff's awareness of failure of the implied warranty, and relevant as logically tending to establish such material proposition.

VII. Defendant's next assignment presents the question whether the defense of breach of implied warranty constitutes a defense under the facts here. Defendant pleaded as affirmative defenses breach of implied warranty resulting in defendant's nonliability for the amounts claimed; in a separate division breach of express warranty and estoppel against plaintiff from asserting its claim. The trial court decided there was no evidence of an express warranty offered.

Stating that no decision of this court had been cited or discovered which directly held bailment of personal property imposed an implied warranty on the part of the bailor, the trial court determined that the weight of authority in other jurisdictions appears to be there is an implied warranty that the chattel will be reasonably satisfactory for the purpose for which it is leased. The following statement in 8 Am. Jur.2d, Bailments, section 144, and in an annotation in 68 A. L. R.2d 850, at 854, was cited:

"It is the general rule that, in the absence of an agreement to the contrary, the bailor of a chattel to be used by the bailee for a particular purpose known to the bailor, impliedly warrants the reasonable suitability of the chattel for the bailee's known intended use of it."

This is a correct statement of the law. See 4 Williston on Contracts, Revised Edition, section 1041, where it is said, "One who lets property for hire may reasonably be subjected to the same implied warranties as one who sells goods." See also 8 C. J. S., Bailments, section 25(a).

Whether the contract sued on, exhibit 1, constitutes a conditional sale agreement or a bailment was determined by the trial court to be immaterial. We need not determine the question here. However, see Hansen v. Kuhn, 226 Iowa 794, 798, 285 N.W. 249, 252, for the test to be applied in determining the nature of the instrument, and 8 C. J. S., Bailments, section 3(2), where the Hansen case is cited; 2 Williston on Sales, section 336, Revised Edition.

VIII. We agree with the trial court's holding plaintiff's attempt in paragraph six of the agreement to disclaim all warranties, express or implied, was of no avail. State Farm Mutual Automobile Insurance Co. v. Anderson-Weber, Inc., 252 Iowa 1289, 110 N.W.2d 449.

IX. Paragraph 13 of Division II of defendant's answer alleged:

"That in connection with said transaction there was an implied warranty that during the period of the lease the equipment would be and continue to be fit and suitable for the defendants known intended use of the same. That by reason of mechanical defects and failure of the equipment to be fit and suitable for the defendants known use thereof the said implied warranty was breached and the defendants are not liable for the amount or amounts claimed by the plaintiff."

Plaintiff's right to recover for the hire is thus challenged by defendant's affirmative pleading.

Under Code section 554.70 various possibilities are open to the buyer when the seller has been guilty of breach of warranty. Under paragraph 1(a) the buyer may set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price. This is the remedy defendant seems to have elected. It is not obligated to rescind in order to maintain this defense. He cannot both recoup for the diminished value of the goods received and also maintain an action for

breach of warranty. 3 Williston on Sales, Revised Edition, section 603.

▮▮ The theory of recoupment is that plaintiff's damages are reduced to an amount which will compensate him for the value of what has been given and defendant, although not bound to perform the contract on his part, has received something of value for which he ought to pay. 3 Williston on Sales, Revised Edition, section 605. It is based upon the doctrine of failure of consideration. Kaltoft v. Nielsen, 252 Iowa 249, 257, 106 N.W.2d 597, 601. It is unnecessary to consider the distinction which existed at common law between setoff and recoupment. Defendant cannot get an affirmative judgment in recoupment. 3 Williston on Sales, Revised Edition, section 605. The maximum relief which could be afforded defendant is diminution of the price of hire by extinction of the rent reserved for the unexpired portion of the lease following defendant's redelivery in June 1961. Drager v. Carlson Hybrid Corn Co., Inc., 244 Iowa 78, 86, 87, 56 N.W.2d 18, 23, and citations.

▮ In 80 C. J. S., Set-off and Counterclaim, section 2, recoupment is defined as "in the nature of a cross-action, wherein defendant alleges that he has been injured by a breach by plaintiff of another branch of the same contract on which the action is founded, and claims to stop, cut off, or keep back so much of plaintiff's damages as will satisfy the damages which have been sustained by defendant." Kelly v. Emary, 242 Iowa 683, 688, 45 N.W.2d 866, 869.

▮ Recoupment is but one of the remedies a buyer or bailee may elect for breach of implied warranty. Of course, he may only recover for one of them. Defendant had the alternative right to rescind the agreement and set up rescission in defense to bailor's action to recover the balance of rental payments. Butler Mfg. Co. v. Elliott & Cox, 211 Iowa 1068, 1071, 233 N.W. 669, 670.

▮ "Rescission is the unmaking of the contract. Rescission may be accomplished by acts *in pais*, as well as through resort to the court of equity; but, in order to accomplish rescission *in pais* for breach of warranty (as well as for other causes), there must be, within reasonable time after knowledge of the existence of the

cause (in this case breach of warranty), an election to rescind. Within reasonable time, too, knowledge of such election, from unmistakable act or notice manifesting it, must be conveyed to the seller (13 Corpus Juris 618 [would now be cited as 17A C. J. S., Contracts, section 413]), and the buyer must restore, or offer to restore, the *status quo*. Until restoration or offer to make restoration is made, there is ordinarily, at law, no rescission." United States Hoffman Mach. Corp. v. Carlson, 253 Iowa 304, 309, 111 N.W.2d 271, 273.

"An attempt to rescind, however, which is ineffectual, e.g., because not sufficiently prompt, will not preclude the allowance of other remedies." 3 Williston on Sales, Revised Edition, section 612; St. George v. Grisafe, 38 N. J. Super. 297, 118 A.2d 835, 836; Royce Chemical Co. v. Sharples Corporation, 2 Cir. (1960), 285 F.2d 183, 188; Heibel v. United States Air Conditioning Corporation, 206 Minn. 288, 288 N.W. 393, 394; nor is an ineffective attempt to rescind a binding election which would bar a buyer or bailee's right to recoupment. Royce Chemical Co. v. Sharples Corporation, supra.

It does not mean the bailee defendant must succeed in an attempt to rescind, or, failing, cannot set off his damages by recoupment. It does mean that if he does rescind he may not so offset. Rice v. Friend Bros. Co., 179 Iowa 355, 370, 161 N.W. 310, 316.

The trial court construed defendant's defense as one for rescission. From our reading of the record we think it is clear defendant made its choice of remedies in the affirmative portion of its answer and chose recoupment.

There remains the question whether a defense of recoupment is available to defendant. Section 554.70, the part of the sales act which prescribes procedure, is limited to some extent by section 554.50 which deals with substantive rights. Procedure does not create substantive rights. In order to preserve the rights given the buyer, or as in this case the bailee, under 554.70, he is ordinarily required to give reasonable notice of breach of warranty as a condition to reducing the price of hire by recoupment in bailor's action for the rent reserved. The provisions of section 554.50 requiring notice are applicable to recoupment. Tripp v.

Renhard, 184 Ore. 622, 200 P.2d 644, 652, which considers the interpretation of these two sections of the Uniform Sales Act.

We think recoupment is available to defendant.

The court, after correctly deciding that bailment of personal property imposes an implied warranty on the part of the bailor, then made reference to certain limitations with respect to implied warranty by concluding "It is also the duty of the bailee to give a reasonable notice of the claimed breach of warranty of fitness to the bailor and give him an opportunity to make good on the warranty. * * *

"* * * where goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind. Code of Iowa, section 554.70, para. 3."

The cited section provides: "Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods * * *." We find no similar provision in the Sales Act that prevents the buyer or bailee from relying on recoupment for breach of warranty after acceptance of the goods with knowledge of the breach in the seller's action for the price. Reed v. Bunger, 255 Iowa 322, 335, 122 N.W.2d 290, 299.

"Indeed, we think the duty of inspection upon receipt of the article purchased is applicable only to cases where the buyer undertakes to rescind his order or to exercise the right to return the property to the seller. He may, if he so elect, rest upon his right to damages for breach of the warranty and recoup therefor in an action against him for the purchase price, or he can maintain an independent action for damages, and in such proceeding it is immaterial that he did not inspect the article and ascertain the defects promptly upon its receipt." Roland v. Markman, 207 Iowa 1322, 1325, 224 N.W. 826, 827, 828.

Paragraph 3 prevents a rescission if the buyer knew of the breach of warranty, but does not expressly prohibit an action for damages in such event nor recoupment in an action brought against the buyer for the purchase price. Roland v. Markman, supra.

It certainly is not the rule that one who purchases with an implied warranty a unit similar to that involved, or other article the real character and quality of which can be determined only by a test of actual, practical use, must lose the benefit of his warranty because he fails to discover concealed or latent defects until in the ordinary course of business he puts the thing purchased to the use for which it is designed and sold. Indeed, we think the duty of inspection upon receipt of an article purchased is applicable only to cases where the buyer undertakes to rescind his order or exercise the right to return the property to the seller. Loxtercamp v. Lininger Implement Co., 147 Iowa 29, 35, 125 N.W. 830, 833, 33 L. R. A., N. S., 501.

If plaintiff or Barnard & Leas induced defendant to continue to use the equipment while they attempted to remedy any defects, defendant should not be prejudiced by deferring assertion of its claim of breach of warranty until such attempts had been completed. Hunt Truck Sales and Service, Inc. v. Omaha Standard, 187 F. Supp. 796, 804 (S. D. Iowa W. D., 1960).

Section 554.70, paragraph 3, does not apply where bailee has elected to recoup.

The court further concluded defendant had failed to prove that notice of the breach of warranty was given plaintiff as required by law. As we shall attempt to point out, we think the court erred in arriving at this conclusion.

It must be conceded there was more mechanical difficulty with the unit than would ordinarily be expected. Defendant had difficulty with it from the outset—the motor overheating, trouble with the paddles in the mixing unit, difficulty with the system of chains and sprockets, difficulty with the shifting mechanism, mechanical problems with the diesel motor first in December 1960, then in March 1961 and again in June of the same year. Evidently defendant and Barnard & Leas thought each time the breakdown could be corrected to give no further trouble. There were numerous repetitions, however, and delays in defendant's operations.

Darl Bingham, one of the partners, testified they started having trouble with the unit in April 1960. Barnard & Leas was

notified and defendant was directed to take the unit to Oskaloosa and Cedar Rapids and later to Des Moines. The problem was not solved then. Defendant was directed to take the paddles out and put in new paddles. Defendant contended the machine was broken down 50 percent of the time they had it from the very beginning to the end. In January 1961 the machine was down for seven weeks. It was in operation only approximately five months between the two blowups. In March 1961 it blew up again. This time defendant was directed to take it to the Ford dealer in Des Moines and a new diesel motor was installed. This time it was down ten days. Bingham testified they made at least two trips a week to have necessary parts made. This all continued until June 1961 when it was returned to Lehman in Des Moines. It was never picked up by defendant.

Edward J. Whisler, vice-president in charge of sales of Barnard & Leas, was cross-examined by defendant concerning exhibit "G", a letter dated November 17, 1960, written by witness to a sales representative of Ford Industrial Engineering Department regarding defects of the unit. After referring to Bingham's complaints regarding the continual difficulties experienced by defendant with the diesel since delivery, in addition to other problems, Whisler stated: "I believe that Mr. Bingham is justified in feeling that since he had never had this problem corrected, though making everyone aware of same for several months, and almost from the beginning, that he is entitled to some kind of a reasonable adjustment." A copy of this letter was sent to plaintiff at a much later date. In rebuttal, plaintiff's witness Scheerman did not deny receiving the copy.

The letter was in evidence, although not formally offered, and should have been considered by the court in arriving at its conclusions. Formal introduction of documentary evidence may be waived. Thus, a formal introduction is waived where the court and parties treat an instrument as in evidence, or where a witness is examined with respect to it. Times-Guthrian Publishing Co. v. Guthrie County Vedette, 256 Iowa 302, 305, 125 N.W. 2d 829, 831, quoting from 88 C. J. S., Trial, section 62(b).

In our opinion consideration of the foregoing substantial evidence by the court under the theory of recoupment rather

than under the theory of rescission would have produced a different finding and conclusion.

The trial court erred in concluding that notice of breach of warranty was not given to plaintiff as required by law.

X. Both sides proceeded without objection as if the issue of notice of breach of warranty was properly raised, evidence was introduced and the court made a finding and conclusion on the issue. Permitting the introduction of testimony on an issue not specifically pleaded obviates the necessity of its formal presentation. "Where parties proceed without objection to try an issue, even though not presented by the pleadings, it amounts to consent to try such issue and it is then rightfully in the case." Wilson v. Corbin, 241 Iowa 593, 605, 606, 41 N.W.2d 702, 709, and citations; Federated Mutual etc. Ins. Co. v. Erickson, 252 Iowa 1208, 1219, 110 N.W.2d 264, 270, and citations; Markman v. Hoefer, 252 Iowa 118, 123, 124, 106 N.W.2d 59, 63; Ashby v. School Township of Liberty, 250 Iowa 1201, 1206, 98 N.W.2d 848, 852, 853.

XI. Plaintiff complains of the court's failure to allow its claim of $4724.90 under the lease provisions for repair and reconditioning the unit in order to re-lease. Since plaintiff has not appealed from the judgment, it was not entitled to a more favorable decision here. Kellerhals v. Kallenberger, 251 Iowa 974, 976, 103 N.W.2d 691, 692; Decker v. Juzwik, 255 Iowa 358, 371, 121 N.W.2d 652, 659; In re Estate of Larson, 256 Iowa 1392, 1403, 131 N.W.2d 503, 509; In re Estate of Clausen, 258 Iowa 324, 332, 139 N.W.2d 196, 201, and citations.

XII. Defendant has established as a matter of law its right to recoup as damages for breach of implied warranty at least any amount of rental defendant owes under the lease agreement. The case is therefore reversed and remanded for judgment accordingly.—Reversed and remanded.

All JUSTICES concur except BECKER, J., who concurs specially.

BECKER, J.—I concur in the result.

I concede that Division I is proper under our present rule 177, R. C. P., which has been declared constitutional by prior pronouncements of this court, but I cannot concur in continued

use of a Rule of Procedure that seems to me to be so clearly wrong. I realize that essentially the same arguments made here were made in Schloemer v. Uhlenhopp, 237 Iowa 279, 21 N.W.2d 457, and there rejected. The court held rule 177 to be constitutional. I also realize that essentially the same rule is contained in Federal Rules of Civil Procedure 38(b) (sans the separate sheet of paper requirement). Nevertheless, I must still protest. The constitutional mandates were made neither by nor for lawyers or judges. This rule 177 and the Federal rule are solely for judicial administrative purposes. As such they should be subject to both the letter and the spirit of the constitutional provisions under which they are promulgated.

The picayunish detail of the rule regulating demands for jury trial requires not only a demand for jury trial in writing, but that it be made on a separate sheet of paper. This apparently stems from judicial exasperation occasioned by the practice of attorneys who fail to demand a jury trial in easily located unequivocal terms. This exasperation in turn stems from a complete reversal of judicial attitude from what I think it should be, to what it is. Rule 177 is based on a philosophy which, as far as I am concerned, is 180 degrees out of phase.

It should be taken for granted that people *do* want to assert their constitutional rights. The rules should provide that they are at all times able to do so until they have clearly, knowingly and affirmatively waived those rights, in this case either in writing or in open court by act or word.

On the contrary, our rule requires that before the substantial and important right to a jury trial (where jury trials have historically been accorded) will be preserved, such right must be demanded *in writing on a separate sheet of paper* within 10 days of filing the last pleading. Otherwise the right is lost. It seems to me that the requirement of a written demand for a jury trial was met by the framers of the constitution on behalf of the people when they penned that document. Loss of the right thus created should not depend on the oversight of counsel.

It may be more efficient in terms of jury assignments to make counsel indicate a desire for a jury trial, but efficiency is not the sole (or even the chief) aim of the administration of

justice. If additional notice that the litigant wants his constitutional rights preserved is required by the judiciary, the sanction for failure to provide that notice should fall on the lawyer, not on the litigant.

Paragraph (d) of rule 177 which allows the trial court in its discretion to grant a jury trial even though jury trial has not been demanded in writing on a separate sheet of paper is an unacceptable poultice for those whose views correspond to mine. The ability to assert a constitutional right should not depend on the discretion of the trial court—or this court. If it does so depend, it is no longer a right but a mere privilege. Nor should the right to jury trial depend on the degree of exasperation felt by the judiciary at having its well laid plans set awry, or on the philosophy of the individual judge as to desirability of jury trials as compared to trial by the court.

The incongruity of the law is best illustrated by this paragraph (d). We make bold to say that if a jury trial is not demanded in writing on a separate sheet of paper as by rule provided, then the court may, *for good cause shown*, grant a jury trial upon application and hearing. Since when do we have to show good cause for the court to grant a *right* which is constitutionally protected in the first place? I suppose that the answer is "Since this rule was passed!"

It is to be noted that rule 177 was held to be constitutional before the 1961 amendment requiring the demand for jury trial to be put on a separate sheet of paper. This facet of the rule has not been approved or disapproved by this court, but the constitutional question is not here raised.

Here the jury demand in writing was timely. The sole and only basis for denial of trial by jury was that demand therefor was not made on a separate sheet of paper.

I believe that rules of orderly procedure are important, but they are not as important as substantive constitutional rights.

I cannot concur in a division of an opinion which approves a rule which to me is so clearly and so fundamentally wrong. Therefore, as to Division I, I dissent. In view of the fact that the majority opinion allows full recoupment (all that plaintiff could be allowed by the jury under the pleadings), I concur in the result.